(No. 28810.—

ALBERT STOKE, Appellee, *vs.* FRANK WHEELER *et al.,*
Appellants.

*Opinion filed September 19, 1945—Rehearing denied Nov. 19, 1945.*

430.

John W. Dubbs, of Mendota, for appellants.

Clyde Smith, of Dixon, for appellee.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiff, Albert Stoke, individually and as administrator of the estate of his wife, Maggie Stoke, deceased, filed a complaint in the circuit court of Lee county against the defendants, Frank Wheeler and Arthur D. Yenerich, executors of the last will and testament of Francis E. May, deceased, and Elsie Hess, to set aside a release and quitclaim deed executed in 1918 by Maggie Stoke of all her right, title and interest in the real and personal property of the estate of her brother, Thomas M. May, deceased.

The chancellor granted the relief sought and ordered an accounting. A freehold being necessarily involved, defendants prosecute a direct appeal.

March 3, 1918, Thomas M. May died intestate. He left surviving as his only heirs-at-law three brothers, John L., Francis E. and Willie T. May, and a sister, Maggie Stoke. March 13, 1918, Francis E. May was appointed administrator. In his petition for letters of administration he declared the estate consisted of real estate and personalty, and estimated the personal property to be worth "about Ten Thousand Dollars." A bond in the amount of $20,000 was executed by him as administrator. March 18, 1918, Maggie Stoke, then fifty-six years of age, executed a release to the administrator of all her interest in the personal property, and, together with her husband, Albert Stoke, also executed a quitclaim deed, conveying all her interest in the real estate to two of her brothers, Francis E. and Willie T. May. At the time of the execution of these instruments Maggie Stoke was indebted to Thomas M. May, deceased, in the sum of $6500, evidenced by her promissory note dated March 1, 1916. The surrender to her of this note is stated to be the consideration for the release. The deed recited a consideration of "One Dollar and other good and valuable considerations" and revenue stamps in the amount of $5 were affixed. May 26, 1919, more than a year later, the inventory in the estate of Thomas M. May was filed, disclosing decedent's ownership of an undivided one-fourth interest in 581.13 acres in Lee county and an undivided one-fourth interest in chattels and interest-bearing securities having an aggregate value of $95,845.20. June 4, 1919, the appearance and consent of Maggie Stoke, having been included as a part of the release dated March 18, 1918, was filed, and the estate closed upon the filing of the final report of the administrator. More than eleven years later, on October 8, 1930, a conservator was appointed for Maggie Stoke. June 23, 1932,

Maggie Stoke died intestate, survived by Albert Stoke, her husband, and John L., Willie T. and Francis E. May, her brothers, as her only heirs-at-law. July 13, 1932, Albert Stoke was appointed administrator of her estate. Her death thus occurred fourteen years after the death of Thomas M. May and the execution by her of the deed and release, and thirteen years subsequent to the filing of the inventory in her brother's estate. During these years, she had made no attempt to cancel either the release or the deed.

August 15, 1936, and June 13, 1938, respectively, John L. May and Willie T. May died intestate. The estates of both were settled without administration, Francis E. May ultimately becoming the sole beneficiary of the assets of each. September 4, 1912, Francis E. May died testate. His last will and testament, admitted to probate October 26, 1942, appointed Frank Wheeler and Arthur D. Yenerich, as executors. After making certain specific pecuniary bequests, Francis E. May devised and bequeathed to Elsie Hess all the rest, residue and remainder of his estate. No family relationship between Francis E. May and Elsie Hess is disclosed by the record.

July 22, 1943, more than eleven years after the death of Maggie Stoke, twenty-five years after the death of Thomas M. May, and twenty-four years after the filing of the inventory in the latter's estate, Albert Stoke, as plaintiff, filed the present complaint seeking cancellation of the quitclaim deed and release. His complaint is based upon the theory that Francis E. May, as administrator of the estate of Thomas M. May, occupied a fiduciary relationship to Maggie Stoke and concealed the amount of the estate. Also alleged is the claimed feeble-mindedness of Maggie Stoke, "at the time of the death of her said brother, Thomas M. May, sometime before and thenceforth until the time of her death," and her dependence "to a great extent upon the advice of her said brothers, during their respective lives and until her death, in respect to her busi-

ness affairs and other matters and to the exclusion of the advice and counsel of her husband and other persons." The relation between Maggie Stoke and her brothers is further alleged to have been confidential and fiduciary, the brothers being the dominant, and she the servient, party.

Defendants contend, first, that the chancellor erred in finding that Maggie Stoke was feeble-minded. The pertinent evidence as to her mental capacity overwhelmingly discloses that, although possessing physical characteristics ordinarily common only to men, as a result of which she remained aloof from the public to a great extent, she was well able to cope with others in the ordinary affairs of life, at least until 1927, nine years after the transaction here assailed. None of the seven witnesses for plaintiff on this phase of the case, namely, a physician and six laymen, testified to any circumstances occurring immediately before or after 1918 from which it could be deduced that she was incapable mentally. The physician did not become acquainted with Maggie Stoke until 1931, and only one of the other witnesses testified to any incident in or prior to 1918, and his testimony was favorable to defendants. On the other hand, the testimony of fourteen winesses for defendant, consisting of a physician who attended Maggie Stoke professionally in 1930, and thirteen laymen, most of whom had business dealings with her prior to and after 1918, was unanimously to the effect that her mentality during this period was unimpaired. She conducted the affairs of a small farm which she owned, and, in general, ably acquitted herself in any transaction undertaken by her. The record is barren of proof as to any transaction, other than the one sought to be set aside, between Maggie Stoke and her brothers, or anyone else, where it is claimed that she was unable to properly protect her own interests. Moreover, the record discloses that two notes, executed by her to her brother, Willie (Theodore) May, in 1909 and 1924, respectively, were allowed by plaintiff, as adminis-

trator, as claims against her estate. No defense was offered against their payment. Neither is there any claim of any unfairness attending the procurement of the note dated March 1, 1916, for $6500, executed by her to her brother, Thomas M. May, and returned to her as the consideration for executing the release in controversy. A consideration of all the relevant testimony impels the conclusion that the chancellor's finding that Maggie Stoke was feeble-minded when she executed the release and deed was manifestly against the weight of the evidence.

Next is urged the insufficiency of the evidence to show the existence of a fiduciary relationship, as a matter of fact, between Francis E. May, or any of the brothers, and Maggie Stoke. Defendants concede that, so far as the administration of an estate is involved, the relationship between the personal representative and a beneficiary is that of trustee and *cestui que trust,* and is fiduciary in character. (*Edwards* v. *Lane,* 331 Ill. 442; *Christensen* v. *Christensen,* 327 Ill. 448.) This relationship, however, does not extend to all their transactions and affairs. In *Ehrich* v. *Brunshwiler,* 241 Ill. 592, the widow of a decedent conveyed to her sister, who was also the wife of the administrator, real estate devised to her by her husband. Shortly thereafter, a conservator was appointed for the widow. Cancellation of the conveyance was not granted, this court holding that whether a fiduciary relation exists between an administrator and a beneficiary, apart from the legal relation existing because of the administration, is a matter of fact, dependent not upon the technical relation of trustee and *cestui que trust,* but upon confidence reposed on one side and resulting superiority on the other. These principles were recently reaffirmed in *Finney* v. *White,* 389 Ill. 374. There, Eva White, widow of James Loren White and administratrix of his estate, effected a settlement with Gula Finney and Herbert E. Hill, half-sister and half-brother of White, by payment to each

of $500 as consideration for quitclaim deeds executed by both to her of a one-half interest in real estate of the agreed value of $15,754.70. We held that no fiduciary relation arises out of the kinship of the parties, alone, and that, in the absence of evidence disclosing special confidence on one side and domination and influence on the other, courts will not interfere with a conveyance between the parties.

Here, there is no testimony as to any conversation between Maggie Stoke and Francis E. May, or any of her brothers, with respect to her execution, in 1918, of the release and quitclaim deed. The record does not disclose any incident or occurrence between her and her brothers prior to 1918, or thereafter, which could even remotely be considered an exercise of domination over her by them. As stated, the three notes executed by her to her brothers, Willie T. and Thomas M. May, are admittedly valid. The sole basis for determining the existence of a fiduciary relation, apart from the technical relation established between Francis E. May, as administrator, and Maggie Stoke, and the alleged fraud and undue influence charged, must arise, therefore, if at all, from the instruments themselves and the probate record in the estate of Thomas M. May. The statement in the petition for letters of administration that the personal property amounted to "about $10,000," in and of itself, is inconclusive. It is well known that the amount specified in petitions for letters of administration is not controlling. Ordinarily, the bond of the personal representative depends upon the amount of the personal estate and is taken into consideration in the case. Again, the delay in filing the inventory and final account for more than a year after execution of the instruments in controversy, in the absence of a showing of fraudulent intent, is immaterial. The fact remains that, before the estate was finally settled, a detailed and complete inventory of the chattels and interest-bearing securities was filed afford-

ing Maggie Stoke an opportunity, had she so desired, of supplementing any lack of information thereofore possessed by her. Moreover, her consent, included as part of the release, to the filing of the administrator's final account, without further notice to her, constituted ample authority for the judge presiding over the settlement of the estate to approve the final account. That she was satisfied with her bargain with the administrator and the remaining heirs is, we believe, sufficiently demonstrated by her failure, during her lifetime, to seek a rescission of the transaction. The claim of plaintiff, her husband, is dependent entirely upon her interest, if any, in the estate of Thomas M. May. No misplaced confidence and resulting superiority having been established, it follows that the evidence is insufficient upon which to base a finding of a fiduciary relationship, as a matter of fact, between Francis E. May, or his brothers, and Maggie Stoke.

To sustain the decree, plaintiff relies, among other things, upon the claimed inadequacy of the consideration, $6500, received by Maggie Stoke for her interest in the estate of Thomas M. May. The gist of his contention is that, irrespective of the existence of a fiduciary and confidential relationship, the consideration for the release and the deed was so inadequate as to constitute fraud. In particular, he argues that there was such a gross disparity between what Maggie Stoke gave and what she received as to afford evidence of fraud. The testimony is conflicting as to the value of the real estate at the time of the death of Thomas M. May. In his amended complaint, plaintiff estimated the real property to be "of a fair cash value of at least $200 per acre." Defendants, in their amended answer, deny this valuation. They aver that the entire 581.13 acres were worth $200 per acre, but they argue that the undivided one-sixteenth interest descending to Maggie Stoke, being merely a fractional portion, when considered by itself, had a valuation of at least twenty

per cent less than the value of the entire acreage. Although several witnesses on behalf of plaintiff, based upon a sale of adjacent land in 1920 described as being comparable to Thomas M. May's land, testified to a valuation of about $388 per acre, plaintiff, in his brief, in estimating the value of Maggie Stoke's interest in the estate of Thomas M. May, uses a figure of $200 per acre. On this basis, her share in the estate would be, roughly,

```
37 acres @ $200 per acre...........$  7,400.00
¼ of chattels and interest-bearing
       securities  aggregating  $23,961.00   5,990.00
                                          _____
                                          $13,390.00
```

Assuming the cancelled note for $6500 to be the only consideration for the release and deed, and disregarding altogether defendants' contention as to an additional sum of $4500 passing between the parties as a consideration for the deed, it appears that Maggie Stokes received less than one-half of the amount to which she was entitled as her share of the estate. A similar contention as to inadequacy of consideration was made in *Finney* v. *White,* 389 Ill. 374. There, after recognizing that the amount paid did not level up with one half of $15,745.70, the agreed value of all of the real estate involved, and that there was no satisfactory explanation in the record as to just how the sum of $1000 was arrived at or agreed upon, we observed, quoting from *Logue* v. *Von Almen,* 379 Ill. 208, "Mere inadequacy of consideration is not a distinct ground for equitable relief against the obligation of a deed, and, standing alone, is ordinarily of little weight as evidence of fraud," unless accompanied by circumstances of overreaching, oppression, or undue influence. Here, the consideration for the release and the quitclaim deed was not so inadequate as to render the challenged transaction fraudulent.

Finally, defendants contend plaintiff's action is barred by *laches.* A motion to strike the complaint on this ground

having been overruled, the defense was affirmatively alleged in an amended answer. It is difficult to perceive why plaintiff should have waited so long before asserting his claim. Claims based upon fraud and upon the existence of a fiduciary relationship should be brought at the earliest opportunity. Francis E. May, who was the executor, died in 1942. Charles F. Preston, who acted as attorney for Francis E. May, as administrator of the estate of Thomas M. May, and who prepared and acknowledged the signatures on the release and quitclaim deed here involved, likewise died before commencement of the present action. The only evidence upon which any claim could be based is the probate record, inasmuch as there is no testimony as to what took place between the parties incident to the execution of the instruments assailed. Stale claims are not encouraged in equity. (*Neagle* v. *McMullen,* 334 Ill. 168.) Although the general rule is that to charge a party with *laches* in the assertion of an alleged right it is essential that he should have had knowledge of the facts upon which he bases his claim, yet if the circumstances were such as to have put him upon inquiry and the means of ascertaining the truth were readily available had inquiry been made; the neglect or failure of the party to make such inquiry will charge him with *laches* the same as if he had known the facts. (*Neagle* v. *McMullen,* 334 Ill. 168; *Ater* v. *Smith,* 245 Ill. 57.) Here, from the inventory filed in the estate of Thomas M. May, full and complete details of the personal property owned by him at his death were available. Probate court records in a matter to which one is a party constitute constructive notice as to the matters and things therein contained. (*Lancaster* v. *Springer,* 239 Ill. 472; *Mason* v. *Odum,* 210 Ill. 471.) The test is not what a party knows, but what he might have known by the use of information within his reach with the vigilance the law requires of him. (*Simpson* v. *Manson,* 345 Ill. 543.) As previously stated, had Maggie

Stoke availed herself of the information afforded by the inventory filed in the estate of Thomas M. May, she could, if she so desired, have been informed as to any discrepancy between the true amount of the personalty and the amount allocated to her upon execution of the release. Failure on the part of Maggie Stoke to utilize the information available to her, and to seasonably claim, during her lifetime, her proper share of the brother's estate militates against the advancement of this claim by her widower, more than eleven years after her death and twenty-four years after the filing of the inventory in the estate of Thomas M. May. The defense of *laches* is particularly applicable against plaintiff when consideration is given to the fact that he, himself, as Maggie Stoke's husband, also executed the quitclaim deed by which she divested herself of all her interest in about thirty-seven acres of farm land, being one sixteenth of the 581.13 acres owned by Thomas M. May when he died. Admittedly, the deed and release constituted one transaction. The presumption obtains that plaintiff was present at the time of the execution by his wife of the release and deed. The allegations of the complaint, as amended, and the testimony of plaintiff to the effect that he had no knowledge or suspicion of the alleged irregularities until shortly after the death of Francis E. May in 1942, under all the circumstances disclosed by this record, fall far short of the vigilance required by the law to absolve him from responsibility for the long delay in asserting his claim. *Neagle* v. *McMullen,* 334 Ill. 168; *Carlock* v. *Carlock,* 249 Ill. 330; *Dempster* v. *Rosehill Cemetery Co.* 206 Ill. 261; *Benson* v. *Dempster,* 183 Ill. 297.

The decree of the circuit court of Lee county is reversed and the cause remanded, with directions to dismiss the complaint, as amended, for the want of equity.

*Reversed and remanded, with directions.*