FIRST NATIONAL BANK OF LINCOLN, Plaintiff-Appellee, *v.* THOMAS R. BROWN *et al.*, Defendants-Appellants.

Fourth District    No. 16020

Opinion filed November 7, 1980.—Rehearing denied December 8, 1980.

Mitchem, Tepper & Gwinn, of Urbana (Mitchel Tepper and Kenneth N. Beth, of counsel), for appellants Thomas R. Brown, Lawrence E. Olsen, and L. Z. Reece.

Gaston & Goldstein, of Urbana (William M. Goldstein, of counsel), for appellants Paul G. Clark and Buannah Clark.

Harris & Harris, of Lincoln (Homer B. Harris, Jr., and Thomas M. Harris, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendants appeal a judgment of foreclosure. They assert that the First National Bank in Lincoln (Bank) should not be permitted to exercise the acceleration clause in a promissory note securing the mortgage.

On April 4, 1977, Thomas R. Brown, Lawrence E. Olsen, and L. Z. Reece (defendants) entered into a partnership agreement for the operation of Lincoln Bonanza Sirloin Pit Restaurant No. 604. On July 1, 1977, they, in their individual names, executed a mortgage and note in the amount of $270,000, on the restaurant property, to the Bank. This was the largest extension of credit of which the Bank was capable. A working capital note was also executed. The mortgage note contained the following acceleration clause:

"The unpaid balance of principal and interest hereby secured shall, at the option of the Payee, become due and payable if the premises or any part thereof shall be conveyed, assigned or otherwise disposed of by the undersigned."

On August 25, 1977, 35 days after the mortgage was executed, the defendants transferred their interest in the real estate in trust to the Champaign National Bank, naming Brown and Olsen as the beneficial owners. The transfer was recorded by the Logan County recorder on September 2, 1977.

The Logan County Title Company publishes the "Daily Abstract

Report," to which the Bank subscribed. The published volume No. 97 for the dates September 1 and 2, 1977, show the transfer to the Champaign National Bank, as trustee, subject to the mortgage. The Bank's witness Tenarvitz, an officer of the bank, testified that it was routine business practice for him to read the Daily Abstract Report.

Defendant Olsen testified that he had a conversation with bank officer Tenarvitz around mid-October 1977, when the working capital note became due. Olsen mentioned that Brown and he were then in business alone, because Reece had elected to "trade out his interest in the Lincoln store." Tenarvitz made a note of these points. Olsen also testified that he told Tenarvitz of the conveyance in trust, but Tenarvitz denies this.

Defendants submitted the Lincoln Bonanza Sirloin Pit business balance sheet and income statement for the period ending December 31, 1977, for the Bank's inspection. By letter of April 11, 1978, Olsen notified Tenarvitz that Reece no longer had any interest in the Lincoln restaurant and that only Brown and himself had renewed the working capital note. The Bank, by letter of April 25, 1978, accepted the renewal without Reece's signature, and stated that it would continue to hold him liable on the real estate and equipment notes.

In October 1978, the defendants sought the Bank's consent to sale of the property to Dr. Clark. During the month of November, the Bank's board of directors did authorize assumption of the mortgage by Clark, with the conditions that the original borrowers all remain on the note, the written guarantees remain in force, the interest rate be increased one-half of one percent, and two percent be charged as an assumption fee. The Bank received no response from the defendants. Shortly after, defendants entered into a transfer and lease-back agreement on the property with Dr. Clark. Tenarvitz testified that he noticed this lease when it was published in the Daily Abstract Report. The December 1978 mortgage payment was tendered to the Bank by Dr. Clark and was refused. On January 5, 1979, defendants orally confirmed the transfer of August 1977. The Bank verified that transfer by title search. Beginning in January 1979, the Bank refused to accept monthly payments although they were tendered each month throughout 1979.

On February 17, 1979, the Bank, relying on the due-on-sale clause in the note, and asserting the *conveyance in trust of August 1977 as the only breach* called for the full payment of the balance due on the mortgage.

■■■ Defendants concede that due-on-sale clauses are generally upheld as valid restraints on alienation. The leading Illinois case is *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1. Defendants also point out that the clause merely confers upon the mortgagee an *option* to accelerate. The clause imposes *no duty* on the

mortgagor *to refrain* from transferring the property. (*Mutual Federal Savings & Loan Association v. American Medical Services, Inc.* (1974), 66 Wis. 2d 210, 223 N.W.2d 921.) The option must be exercised within a reasonable time after the event which gives rise to the right to accelerate. (*Malouff v. Midland Federal Savings & Loan Association* (1973), 181 Colo. 294, 509 P. 2d 1240, cited with approval in *Baker*.) *Baker* states also that traditional equitable defenses may be raised by a mortgagor.

Defendants assert that the Bank should be barred from foreclosure because of waiver, estoppel, or laches. Any bar would depend upon whether and when the Bank had knowledge of the conveyance in trust. The trial judge concluded that the Bank first became aware that the mortgaged property was for sale in October 1978, and that the Bank first had knowledge of the August 1977 conveyance in trust on January 5, 1979. We find the trial court's findings on the Bank's knowledge to be against the manifest weight of the evidence.

The $270,000 loan was large, and a bank officer testified that it was about as large a loan as the Bank could make. The Bank subscribed to the County Abstract Reporter and the Reporter was read by bank officers. The conveyance in trust was reported in the Reporter. The Bank apparently required the defendants to furnish periodic financial statements; whether required or not, financial statements dated December 31, 1977, were furnished to Tenarvitz, the bank officer. (The trial court's findings and the Bank's brief characterize the statements as profit-and-loss statements, but the record reveals a balance sheet as well.)

The balance sheet for Lincoln Bonanza Sirloin Pit No. 604 shows land and building valued at $283,510.93, which we understand to be the mortgaged premises. The equity section reveals that there are only two partners—Brown and Olsen. The Bank had loan money on the mortgage to Brown, Olsen, and Reece, individually. The mortgaged premises subsequently are listed as partnership assets on a balance sheet that lists only two of the initially three mortgagors as having any equity in the assets. Nothing else in the balance sheet provides a clue as to Reece's relaionship to the assets.

We can only conclude that at the time the financial statements were presented to the Bank, the Bank had actual knowledge that the property was no longer held by Brown, Olsen, and Reece, individually. Rather, the total partners' equity was held by only Brown and Olsen.

■■ A person has notice of a fact if he knows the fact. The law states also that he has notice of what he might have known by use of information within his reach with the diligence that the law requires of him. (*Stoke v. Wheeler* (1945), 391 Ill. 429, 63 N.E.2d 492.) Facts and circumstances which merely arouse or excite suspicion are not to be equated with knowledge or a reason to know. (*Peoria Savings & Loan Association v.*

*Jefferson Trust & Savings, Inc.* (1980), 81 Ill. 2d 461, 410 N.E.2d 845.) But in our case, we have a Bank monitoring a partnership by means of financial statements, presumably for Bank's interest in partnership assets that secure loans. The statements submitted to the Bank constituted notice to it. We agree that the "Daily Abstract Report" did not establish notice, actual or constructive.

Defendants claim that because of the Bank's knowledge of the conveyance in trust, the Bank may not now accelerate and foreclose. Defendants assert waiver, estoppel, and laches. A waiver is the intentional relinquishment of a known right. (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236.) The record before us does not clearly disclose a waiver, although a waiver could be inferred from the Bank's long delay in asserting its rights. Because of our disposition, we need not rule on this point.

We hold that the affirmative defenses of estoppel and laches have been proved as a matter of law and we reverse. Estoppel: "[W]here a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or act to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts." (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447, 220 N.E.2d 415, 425, as quoted in *Perlman*, 15 Ill. App. 3d 784, 795, 305 N.E.2d 236, 245 (emphasis in *Perlman* deleted).) Laches: "[S]uch a neglect or omission to assert a right, taken in conjunction with the lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate as a bar in a court of chancery." *Perlman*, 15 Ill. App. 3d 784, 795, 305 N.E.2d 236, 245.

■■ Defendants assert that had the Bank made a timely declaration of its intent to accelerate, defendants could have obtained the refinancing of the mortgage at more favorable terms than were available in late 1978 or early 1979. The evidence of record reveals rising interest rates during this period. The "statement or conduct" of plaintiff would be its conduct in monitoring the balance sheet and then remaining silent when it knew or should have known of a transfer. Defendants claim reliance, and it is clear from the evidence that they did not know the true facts. The critical true fact here is not the fact of conveyance in trust, but the fact that the Bank either (1) had decided not to act upon knowledge of that conveyance, or (2) had not investigated properly when information put it on notice of a conveyance. An estoppel has been shown, and if lapse of time is added, laches is shown. We repeat that the Bank seeks to accelerate solely because of the August 1977 transfer of which it had knowledge in December of 1977. The Bank

received and accepted payments from July 1977 through December of 1978. Thus, laches and estoppel are established as a matter of law.

The judgment of the circuit court is reversed.

Judgment reversed.

MILLS, P. J., and WEBBER, J., concur.