PROVIDENT FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, *v.* REALTY CENTRE, LTD., *et al.*, Defendants-Appellees.

Third District    No. 80-540

Opinion filed October 14, 1981.—Modified on denial of rehearing November 24, 1981.

SCOTT, P. J., specially concurring.

Eric E. Hasselberg, of Sweat & Sweat, of Peoria, for appellant.

Rudolph J. Westphal, of Peoria, for appellee Realty Centre, Ltd.

Randall Moon, of Peoria, for appellees Alan J. Campbell, G. Rodger Moon, and Roland D. Wilken.

Mr. JUSTICE BARRY delivered the opinion of the court:

In 1975 Realty Centre, Ltd., executed a promissory note to Provident Federal Savings and Loan Association for the sum of $375,000 at 10 percent interest with the note being secured by a brick office building in Peoria. The note contained the following provision:

"The terms and conditions under which this loan is made are predicated on the continued ownership by the undersigned [Realty Centre] of the real estate set forth in said mortgage and in the event the undersigned's interest in said real estate is transferred without the consent of the Association, the Association may increase the interest rate to eight per centum (8%) [sic] per annum or declare the entire unpaid balance of this note due, or both, by giving the undersigned written notice. All of the terms and conditions of said mortgage are hereby incorporated in and made a part of this note."

The mortgage stated generally that it was given to secure performance of the agreements in the note "which are hereby incorporated herein and made a part hereof * * *," without mentioning expressly the "due on sale" clause which is quoted above. The mortgage was recorded, but not the note.

On January 1, 1980, Realty Centre entered into an installment contract with G. Rodger Moon, Roland D. Wilken and Alan J. Campbell to sell this office building for the sum of $700,000, payable as follows: $297,337 in cash at closing; $363,626.12 at 10 percent interest payable in monthly installments of $3,410; and $39,026.88 at 9½% interest payable in monthly installments of $672.87. The purchasers assumed possession on January 10, 1980. The contract was not recorded, but a memorandum of agreement for warranty deed was recorded.

On March 13, 1980, Provident Federal notified Realty Centre that one of the conditions of the 1975 note and mortgage had been violated by the transferal of its interest in the building without the consent of Provident Federal, and that failure to cure such breach on or before April 14, 1980, might result in acceleration of all sums due on the note. Realty Centre responded on April 1, 1980, with a letter denying any violation of the agreement but also with a request that Provident Federal consent to the sale on contract of the property in question. Realty Centre pointed out that the contract purchasers were all financially secure people who would

add to the value of the collateral because Realty Centre remains liable as well.

Provident Federal did not consent but rather filed a complaint for foreclosure of the mortgage on June 5, 1980. Realty Centre filed a motion to dismiss the complaint, and following a hearing, the court granted the motion. The court stated two reasons for its dismissal order: (1) that the due-on-sale clause in the note is an unreasonable restraint upon the alienation of real estate; and (2) that the due-on-sale clause contained in the note was not set forth in the mortgage, which is the document of record, and therefore is not constructive notice. This appeal followed.

In *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1, the supreme court reiterated its earlier rule that restraints on alienation are void unless reasonably designed to attain or encourage accepted social or economic ends (*Gale v. York Center Community Cooperative, Inc.* (1960), 21 Ill. 2d 86, 171 N.E.2d 30), and then held a due-on-sale clause to be a reasonable restraint, "one for which sound and convincing reason exists." (61 Ill. 2d 119, 125, 333 N.E.2d 1, 4.) The court in *Baker* discussed in considerable detail the lender's need to protect its security interest by giving it the option of preventing a subsequent sale of the security property to a person whose personal and financial qualities are unknown to the lender, and concluded this was a recognized valid purpose for which a restraint may be imposed. The court rejected a case-by-case application of a reasonableness test because such an approach would not promote the stability of real estate titles; instead, the more appropriate approach was held to be to judge the reasonableness of a restraint by the purpose sought to be obtained.

A due-on-sale clause identical to the one in the case at bar was involved in a recent case before this court. In *Sleven Container Corp. v. Provident Federal Savings & Loan Association* (1981), 98 Ill. App. 3d 646, 424 N.E.2d 939, the validity of the due-on-sale clause was conceded by the parties and was not an issue on appeal. Accord, *First National Bank v. Brown* (1980), 90 Ill. App. 3d 215, 412 N.E.2d 1078.

Here Provident Federal contends that, under the *Baker* ruling, this due-on-sale clause was valid and enforceable, and that the trial court erred in dismissing the foreclosure action. Provident Federal points out that in addition to protecting the lender's security interest, the due-on-sale clause is also used to free funds for loans at higher interest rates than were charged on the original loan. In other words, where, as here, the subsequent sale occurs at a time of rising interest rates, the lender can require the loan to be renegotiated at a higher rate for its own commercial advantage, thereby preventing the original borrower-purchaser from realizing as high a profit upon the subsequent sale. The economic effect of allowing a due-on-sale clause to be used is obviously of benefit to lending

institutions during a time of rising interest rates, but that benefit is at the expense of borrowers.

In other jurisdictions, some courts have concluded that enforcement of a due-on-sale clause is a reasonable restraint on alienation where the purpose is to obtain an increased rate of interest (*e.g., Century Federal Savings & Loan Association v. Van Glahn* (1976), 144 N.J. Super. 48, 364 A.2d 558), while others have refused to permit the lender to accelerate the due date for any purpose other than to protect its security interest. (*E.g., Tucker v. Lassen Savings & Loan Association* (1974), 12 Cal. 3d 629, 526 P.2d 1160, 116 Cal. Rptr. 633; *Patton v. First Federal Savings & Loan Association* (1978), 118 Ariz. 473, 578 P.2d 152; *Nichols v. Ann Arbor Federal Savings & Loan Association* (1977), 73 Mich. App. 163, 250 N.W.2d 804.) Furthermore, the Supreme Court of California has held that the burden is upon the lender in each case to demonstrate that enforcement of the due-on-sale clause is reasonably necessary to protect against impairment of security. *Wellenkamp v. Bank of America* (1978), 21 Cal. 3d 943, 582 P.2d 970, 48 Cal. Rptr. 379.

A balanced approach was taken by the court in *First Southern Federal Savings & Loan Association v. Britton* (Ala. Civ. App. 1977), 345 So. 2d 300, where the court considered a provision prohibiting a transfer of title or change of possession without the written approval of the mortgagee, violation of which prohibition would constitute a default, and at the mortgagee's option all amounts secured by the mortgage would become due. The court said that the right to exercise the option to accelerate was not an arbitrary right, and since the terms gave no indication that the clause was for any purpose other than protection of the mortgagee's security, the right to enforce the clause was dependent upon the sale increasing the risk of default or threat to the security. The court went on to state:

"We do not say that the mortgagee may not specifically contract for the option to accelerate in the event of sale unless the purchaser agrees to payment of increased interest up to the current rate at time of assumption of the unpaid mortgage balance. We do hold that such purpose may not be hidden behind a clause which is assumed to only provide protection for the security. If the clause is to be used to advance the financial interest of the lender through requirement of payment of a penalty or an increase in interest rate, such purpose must be openly stated and bargained for from the inception of the contract. If the condition for the approval of a sale may be hidden and be other than for the protection of the historical interest of the mortgagee, the mortgagor will be at the mercy of the mortgagee. It is therefore the opinion of this court that under the stipulation before the trial court, appellant had no

justification for refusing consent to the transfer. The due-on-sale clause appearing in this mortgage may not be used as an instrument to require an increase in interest rate nor for collecting a penalty in order to prevent acceleration and foreclosure." 345 So. 2d 300, 303-04. Contra, *Tierce v. APS Co.* (Ala. 1979), 382 So. 2d 485. See Dunn and Nowinski, *Enforcement of Due-on-Transfer Clauses: An Update*, 16 Real Prop., Prob. & Tr. J. 291 (1981).

We think the principles enunciated in *First Southern* are eminently sensible and fair to all parties. A lending institution may undertake to protect itself during a period of rising interest rates by means of a due-on-sale clause, but only when the clause expressly states that it is for that purpose. It is, however, for the Illinois Supreme Court to recognize any such limitation upon the right of the lender to accelerate the loan under a due-on-sale clause.

■■ In the case before us, we reach the decision somewhat reluctantly that under the holding in *Baker* we are required to recognize the validity of this due-on-sale clause since its purpose is in part, at least, to protect the lender's security interest even though Provident acknowledges another of its purposes is to seek an increase in the interest rate. Thus the trial court erred in ruling that the due-on-sale clause was an unreasonable restraint upon alienation.

Having concluded that the due-on-sale clause contained in the note was not an unreasonable restraint on alienation, we next must consider whether the subsequent purchasers had constructive notice of the due-on-sale provision since the clause was not contained in the mortgage, but only in the unrecorded note. The mortgage stated, *inter alia*, that it was given "to secure performance of the other agreements in said note, *which are hereby incorporated herein and* made a part hereof * * *." (Emphasis added.)

■■ In the case involving a bond secured by a trust deed, the test was said to be whether the language in one instrument was such as to bring its terms clearly within the provisions of the other instrument. (*Oswianza v. Wengler & Mandell, Inc.* (1934), 358 Ill. 302, 193 N.E. 123.) The courts of this State have long recognized that "[w]hen a note and the mortgage given to secure it mutually refer to each other, they must be construed together." (*Metropolitan Life Insurance Co. v. Kobbeman* (1931), 260 Ill. App. 508, 512. See also 27 Ill. L. & Prac. *Mortgages* §72 (1956).) One authority says:

> "It is generally conceded that an acceleration clause in a note or bond permits the acceleration of the mortgage although there is no acceleration provision in the mortgage." 55 Am. Jur. 2d *Mortgages* §379 (1971).

■■ In the instant case, the language of the mortgage quite specifically

incorporates by reference the terms of the note, and subsequent purchasers would be put on inquiry as to the contents of the note so incorporated. Hence, we find that the subsequent purchasers did have constructive notice of the due-on-sale clause.

Accordingly, the dismissal order entered in the circuit court of Peoria County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

STOUDER, J., concurs.

Mr. PRESIDING JUSTICE SCOTT, specially concurring:

My concurrence is mandated in light of our supreme court's decision in *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1. It should be noted with interest, however, that in *Baker*, while the court held a "due on sale" provision to be a permissible restraint on the alienation of property, the real issue to be determined in *Baker* was whether a provision in a note providing for an increase in interest of 1 percent above the original rate was permissible. The original interest rate in *Baker* was 6 percent per annum. *Baker* was decided prior to the present inflationary era of our economy. The imposition of results which were just and not prohibitory in pre-inflation times might well not be so easily reached and imposed in the atmosphere of our present economy. The citation in the majority opinion of the case of *Sleven Container Corp. v. Provident Federal Savings & Loan Association* (1981), 98 Ill. App. 3d 646, adds little if anything to the majority opinion as to the validity of a "due on sale" clause, since such question was not an issue in the case.

In the instant case, *Provident* acknowledges that one of the purposes in enforcing the "due on sale" clause is to seek an increase in its interest rate. Illinois as yet has not addressed the issue of whether a bank can validly accelerate a mortgage debt pursuant to a due-on-sale clause solely for the purpose of increasing the interest rates in its mortgage portfolio. When a mortgagee's security is not jeopardized, then in my opinion a due-on-sale clause should be inoperative when the reason for enforcing the clause is to obtain for the mortgagee higher interest rates which are currently in effect. See "Due on Sale Clauses in Illinois," authored by David L. Higgs, Southern Illinois University Law School, published in volume 5, page 35, The Illinois Fund Concept (Attorneys Title Guaranty Fund Inc. 1981).

A solution of the problems and in my opinion the alleviation of the injustices which in many instances result by enforcement of due-on-sale clauses in our present economy will hopefully be considered by our supreme court or receive the attention of our General Assembly.