HUSEIN BECOVIC *et al.*, Plaintiffs and Counterdefendants-Appellants, v. HARRIS TRUST & SAVINGS BANK, Trustee, Defendant-Appellee (Vincent O'Malley *et al.*, Defendants and Counterplaintiffs and Counterdefendants-Appellees and Cross-Appellants; Cynthia R. Miller, Defendant and Counterplaintiff-Appellee and Cross-Appellee).

First District (5th Division)   No. 83—2274

Opinion filed October 5, 1984.

Theodore Birndorf, Seymour J. Layfer, and Barry B. Berk, all of Chicago, for appellants.

Kenneth Ditkowsky and Jay Contorer, both of Ditkowsky & Contorer, of Chicago, for cross-appellants.

David G. Lynch and Vincent A. Lavieri, both of Rudnick & Wolfe, of Chicago, for cross-appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from a partial summary judgment entered for defendant Cynthia Miller (Miller) on her counterclaim seeking a declaration that she is the sole beneficial owner of certain property held in trust by defendant Harris Trust & Savings Bank under trust number 35945 (the Harris trust), and a judgment against defendants Vincent and Christina O'Malley (the O'Malleys) for an amount due under a certain note. The sole issue before us is the propriety of that order.

It appears from the pleadings and documents attached thereto that this action arises from the sale of a 36-unit apartment building (the property). For some time prior to May 1, 1974, Miller and her husband, Joseph, were the beneficial owners thereof, with title being held by the National Bank of Albany Park as trustee. Various transactions then occurred, as evidenced by the following documents, each dated May 1, 1974.

1. The National Bank of Albany Park, through a nominee, conveyed title to La Salle National Bank, as trustee under trust number

46985 (the La Salle trust). It appears that the beneficiary of that trust was David Kaufman (Kaufman).

2. La Salle National Bank, as maker and in its capacity as trustee, executed a bearer note in the principal amount of $329,500 (the La Salle note). The note recites that it is secured by a trust deed under trust No. 46985 and further states:

> "It is agreed at the election of the holder *** hereof and without notice, the principal sum remaining unpaid hereon, together with accrued interest thereon, shall become at once due and payable *** in case of default on the payment of principal or interest when due in accordance with the terms hereof or in case at anytime hereafter the right to foreclose the trust deed shall accrue to the legal holders hereof under any of the provisions contained in said trust deed."

The note also states that "[t]he makers, sureties, guarantors and endorsers of the note, jointly and severally, do hereby waive demand, presentment for payment, notice of non-payment and protest ***." The O'Malleys signed the note as guarantors.

3. La Salle National Bank, as trustee, also executed a trust deed (the La Salle trust deed) for the property in favor of Chicago Title & Trust Co., as trustee, to secure the above note. Paragraph 15 thereof (the due-on-sale clause) provides in pertinent part:

> "Time is of the essence hereof and if default be made in performance of any covenant herein contained or in making any payment under said Note or any extension or renewal thereof *** or if the Mortgagor or Guarantor shall sell said property under a contract for deed or in any other manner transfer title or beneficial interest to said property, then and in any of said events, the Mortgagee is hereby authorized and empowered, at its option, *** to declare, without notice, all sums secured hereby immediately due and payable whether or not such default be remedied by the Mortgagor or Guarantor, and apply toward the payment of said mortgage indebtedness of the Mortgagee to the Mortgagor or Guarantor, and said Mortgagee may also immediately proceed to foreclose said mortgage."

No signature other than that of a La Salle National Bank officer appears on the trust deed.

4. A trust agreement, No. 35945, between Harris Trust & Savings Bank and the O'Malleys, the first page of which bears the date May 1, 1974, recites that Harris Bank, as trustee, "is about to take title" to the property and names the O'Malleys as beneficiaries there-

under. Inserted under the declaration of the O'Malleys' rights is a provision stating, "SUBJECT TO: Collateral Assignment dated June 21, 1974 to Cynthia R. Miller." The agreement was executed on July 17, 1974. Although it is agreed that, at some time, title to the property was transferred from the La Salle trust to the Harris trust, there is no document in the record evidencing that transaction.

5. An assignment by the O'Malleys to Miller of the beneficial interest in the Harris trust (the collateral assignment), the first page of which also bears the date May 1, 1974, provides in pertinent part:

> "This Assignment is made and given as collateral security for payment in full of (i) all principal and interest in that certain Note of the Assignor or its agents, dated May 1, 1974, in the original principal amount of $329,500 ***.
>
> Upon nonpayment at maturity (whether by acceleration or otherwise) of the principal or interest on the indebtedness secured hereby, or at any time or times or from time to time thereafter, said Collateral Assignee may: (a) exercise any one or more of all of the rights or remedies set forth in the Note hereinabove described *** and, in addition, *** shall have full power and authority to exercise all the rights of a secured party under the Uniform Commercial Code of Illinois. Any requirement of the Code for reasonable notice shall be met if such notice is mailed, postage prepaid, to the Assignor at the address of the Assignor as shown on the records of the Collateral Assignee at least 5 days prior to the time of the sale, disposition or other event or thing giving rise to the requirement notice."

The assignment was accepted by Miller on June 21, 1974, and received by Harris Bank on July 3, 1974.

After possessing the property, collecting the rents, and making the required payments for approximately five years, the O'Malleys entered into a contract for sale of the subject property to plaintiffs, Husein and Ese Becovic (the Becovics). The document was made "subject to the rights that Cynthia R. Miller who holds Purchase Money Notes on the subject property has to the subject property."

The O'Malleys and the Becovics then signed "Articles of Agreement for Warranty Deed" on February 29, 1980, which provided that the "conveyance to be made by Seller shall be expressly subject to *** (g) Mortgage to Dovenmuehle, Inc., Dated 12/11/62 Recorded 7/24/63 *** and Mortgage to Chicago Title & Trust Co., Trustee, dated 5/1/74 which will be paid by seller." A rider attached thereto and made a part thereof states that the "entire Agreement is subject

to the rights of Cynthia R. Miller in said property and in prior notes and security interests in said property as described in the terms of said security instruments and notes and notes and documents and rights of all parties hereto are made expressly subject thereto."

The Becovics gave the O'Malleys a down payment of $80,000, entered into possession of the property, began collecting rents, and made periodic installment payments through and including June 1980. It is alleged that the O'Malleys, in turn, made the required installment payments to Miller.

On or about June 23, 1980, Miller gave notice that the beneficial interest in the Harris trust would be sold at a public sale pursuant to section 9—504 of the Uniform Commercial Code. (Ill. Rev. Stat. 1979, ch. 26, par. 9—504.) The sale was held on July 8, 1980, at which Miller purportedly purchased the interest, as sole bidder, for an amount substantially less than the indebtedness remaining due under the note the O'Malleys had signed as guarantors.

The instant action was commenced by the Becovics when both Miller and the O'Malleys demanded payment from them. Their complaint is in the nature of an interpleader, and alleged that Miller's demand was based on her purported purchase of the beneficial interest in the Harris trust, whereas the O'Malleys asserted that the sale was void and claimed the right to be paid pursuant to the articles of agreement for warranty deed. The Becovics requested that they be allowed to pay the contested funds into court, and that Miller and the O'Malleys interplead to resolve their differences.

Miller counterclaimed against the Becovics and the O'Malleys, asserting that she was the holder of the bearer note secured by the La Salle trust deed and assignment of beneficial interest in the Harris trust; that the O'Malleys' sale of the property to the Becovics entitled her to foreclose under the terms of the due-on-sale clause contained in the trust deed; that with the right to foreclose, there accrued the right to accelerate payments due under the La Salle note, pursuant to the terms thereof; that acceleration had been declared and demand for payment made; that the O'Malleys had refused to pay, and the note was therefore in default; that under the terms of the collateral assignment, she was authorized to sell the security upon default on the note; and that a public sale was held on July 8, 1980, at which she purchased the interest in the Harris trust for $29,286.15 less than the amount due her under the note. Miller requested that she be declared the sole beneficiary under the Harris trust and entitled to an accounting and payment of all rents and profits since the date of sale; that she be granted judgment for pos-

session as against the O'Malleys and the Becovics and a deficiency judgment for the $29,286.15 remaining due from the O'Malleys.

In response, the O'Malleys denied that they signed as guarantors of a bearer note on May 14 (*sic*), 1974—alleging that the documents bearing the date May 1, 1974, had been backdated by Miller—or that they caused the note to be delivered to Miller. They asserted that they purchased the property from Kaufman, not from Miller; that Kaufman was the beneficiary of the La Salle trust; and that they had merely assumed the mortgage made by Kaufman, signing the note as guarantors upon Miller's insistence. They also raised several affirmative defenses, including (1) that Miller is not the holder or owner of the La Salle note; (2) that there was no privity of contract between them and Miller; (3) that Miller waived her right to enforce the due-on-sale clause by consenting to the transfer from Kaufman to them, and by accepting payments of arrearages and installments due with prior knowledge of the contract sale to the Becovics; (4) that Miller released the O'Malleys as guarantors when she released Kaufman, the principal obligor; and (5) that Miller never declared a default or demanded payment of the balance due on the note. The O'Malleys also counterclaimed against the Becovics for $290,000, asserting that they had failed to make the payments required by the articles of agreement for warranty deed, and that by virtue of this default, the entire principal became immediately due and payable.

Miller and the O'Malleys filed cross-motions for partial summary judgment on the question of ownership of the beneficial interest in the Harris trust, and on September 6, 1983, the trial court granted Miller's motion, finding that she became the sole beneficial owner under the Harris trust on July 8, 1980, by virtue of her acceleration of the indebtedness and purchase of the beneficial interest therein. The order declared that she was entitled to immediate possession and to all rents and profits from and after July 8, 1980. Judgment was also entered against the O'Malleys on the question of liability for the deficiency after the sale, and this appeal was then brought by the Becovics and the O'Malleys.

Opinion

It is contended here that (1) the trial court erred in ruling, as a matter of law, that the due-on-sale clause was enforceable against the O'Malleys; and (2) several questions of material fact were raised in the pleadings which rendered summary judgment for Miller improper.

Initially, we note that while summary judgment should be

granted where the pleadings, exhibits, depositions, and admissions on file—together with the affidavits, if any—show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005), it is a drastic measure to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958).

■ We first consider the Becovics' contention that the due-on-sale clause contained in the La Salle trust deed constituted an unreasonable restraint on alienation of the property. Acknowledging that in *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1, our supreme court held that due-on-sale clauses are valid, the Becovics nevertheless argue that the trend in cases decided since *Baker* is to examine the reasonableness of each due-on-sale clause on a case-by-case basis and to deny enforcement thereof absent a demonstration that it is necessary to protect against impairment of the security or risk of default, citing as an example the California supreme court opinion in *Wellenkamp v. Bank of America* (1978), 21 Cal. 3d 943, 582 P.2d 970, 148 Cal. Rptr. 379. We note, however, that the *Baker* court expressly rejected the case-by-case test of reasonableness, stating that "[s]ince stability of real estate titles is of paramount importance it is necessary that the court follow a policy in construing restraints on alienation which will produce a reasonable degree of certainty," and that "judging the reasonableness of [due-on-sale clauses] under the circumstances in each case would not promote the desired stability of titles ***." Moreover, the supreme court has had occasion to reconsider this question in the recent cases of *Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 454 N.E.2d 249, and *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488, where, in adhering to its holding in *Baker*, the court stated, "[t]his court recognizes due-on-sale provisions as valid *per se*" (101 Ill. 2d 400, 405, 462 N.E.2d 488, 490). Consequently, the Becovics' argument that the clause in question here is unenforceable as a matter of law because its only purpose was to extract a higher rate of interest from them must fail under established law in this State.

The Becovics and the O'Malleys also contend that, even if valid on its face, the due-on-sale clause in this case was not enforceable because the O'Malleys did not sign the trust deed, which was the only instrument containing that proviso and, correlatively, that as

subsequent purchasers from Kaufman, there was no privity of contract between them and Miller. Specifically, they point out that neither the note the O'Malleys signed as guarantors of the indebtedness secured by the La Salle trust deed nor the collateral assignment to Miller of the beneficial interest in the Harris trust contained a due-on-sale provision, and reason therefrom that Miller could not predicate an acceleration of the note or sale of the beneficial interest upon a provision not contained in those documents.

In support thereof, they cite *2140 Lincoln Park West v. American National Bank & Trust Co.* (1980), 88 Ill. App. 3d 660, 410 N.E.2d 990, where, in affirming the trial court's disallowance of the bank's attempt to accelerate a note on the basis of a default of a due-on-sale clause not contained therein, the court stated:

> "[W]e find that the trust deed and the note are wholly independent documents, and unless there is sufficient language in the note that would incorporate a provision in the trust deed, that provision is entirely ineffective as to the note." (88 Ill. App. 3d 660, 664, 410 N.E.2d 990, 993.)

Subsequently, however, in *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488, wherein plaintiff sought a declaratory judgment that the due-on-sale clause which appeared in the mortgage but was neither incorporated nor specifically referred to in the note precluded the lender from foreclosing the mortgage, the court in *Abdul-Karim* stated that "to the extent it [*2140 Lincoln Park West*] held that the mortgage provision provided a covenant without a remedy [citation], the holding was in error," but it agreed to the soundness of the general principle set out in *Conerty v. Richtsteig* (1942), 379 Ill. 360, 41 N.E.2d 476, and *Oswianza v. Wengler & Mandell, Inc.* (1934), 358 Ill. 302, 193 N.E. 123, on which the court in *2140 Lincoln Park West* relied; namely, that "clauses in security instruments cannot affect notes unless they are also set forth in the note or at least incorporated by reference ***." *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 408, 462 N.E.2d 488, 492.

An analogous situation was presented in *Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 454 N.E.2d 249, wherein plaintiff, a federally-chartered lending institution, appealed from the dismissal of its complaint seeking foreclosure on a mortgage because of a default by defendant-mortgagor of the due-on-sale clause contained in the note but not in the mortgage instrument. Although the principal issue was whether Federal banking regulations preempted State limitations on due-on-sale clauses, in

reversing the dismissal of the complaint and remanding for resolution of certain factual questions and consideration of equitable defenses which had been raised by the mortgagor, the court also held that the language of the mortgage, which "clearly and affirmatively" incorporated the terms of the note, was sufficient to give notice of the due-on-sale clause to subsequent purchasers.

■ Examining the note before us, we find that the La Salle trust deed was specifically referred to—both by name and number—in the first paragraph, and that it further recited:

> "[P]ayment *** is secured by trust deed bearing even date herewith, to Chicago Title & Trust Co. ***. It is agreed that at the election of the holder *** and without notice, the principal sum remaining unpaid hereon, together with accrued interest thereon shall become at once due and payable *** in case at any time hereafter the right to foreclose the said trust deed shall accrue to the legal holders hereof *under any of the provisions contained in said trust deed.*" (Emphasis added.)

Thus, while it is true that the O'Malleys did not actually sign the La Salle trust deed, it appears that under the standards enunciated in *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488, and *Provident Federal Savings & Loan Association* (1983), 97 Ill. 2d 187, 454 N.E.2d 249, as well as the general principle set forth in *2140 Lincoln Park West v. American National Bank & Trust Co.* (1980), 88 Ill. App. 3d 660, 410 N.E.2d 990, the specific references thereto, when read in conjunction with the language granting "the right to foreclose the trust deed *** under any of the provisions contained [therein]" was sufficient to incorporate the due-on-sale term of the trust deed into the note signed by the O'Malleys as guarantors, and to put them on notice that the holder of the note had the right to foreclose the mortgage and/or bring a personal liability action against them in the event of a default thereof.

However, as the O'Malleys also point out, Miller did not elect to pursue either of these remedial options; rather, she proceeded, pursuant to section 9—504 of the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—504), to cause a public sale—at which she was the sole bidder—of the beneficial interest in the Harris trust, and to thereafter seek, by way of counterclaim in this action, a deficiency judgment against them for the $29,286.15 remaining unpaid on the La Salle note. Asserting that the sale was void, the O'Malleys essentially argue that the collateral assignment of the beneficial interest of the Harris trust was a contract independent of the La Salle

loan transaction consisting of the trust deed containing the due-on-sale clause and the note secured by that deed, and that Miller should not therefore be permitted to rely on the provisions of the trust deed to trigger a right to sell the beneficial interest assigned to her under a separate and unrelated document.

It thus becomes necessary to determine whether the Harris trust instruments also sufficiently incorporate the due-on-sale clause of the La Salle trust deed as to permit a sale of the beneficial interest upon default of the latter. Initially, we note that although the parties agree that at some point title to the property was transferred from La Salle to Harris, the record contains no deed in trust or other instrument evidencing that conveyance or even establishing when it occurred; indeed, we find only two documents directly relating to the Harris trust transaction. The first is the trust agreement, No. 35945, which recites that Harris "is about to take title" to the property at issue, followed by a paragraph naming the O'Malleys as beneficiaries, under which is typewritten "Subject to Collateral Assignment dated June 21, 1974 to Cynthia Miller," and while the first page bears the date May 1, 1974, the following page—on which the O'Malleys signed—states that the agreement was executed on July 17, 1974. The remainder of the document merely sets forth, in standard, preprinted form, the rights and duties of Harris as trustee. We find no language therein—nor does Miller point to any—incorporating the due-on-sale clause contained in the La Salle trust deed or the note secured thereby. Rather, she directs our attention to certain language included in the collateral assignment of the beneficial interest—the second document relating to the Harris trust transaction—which provides:

> "[T]his assignment is made and given as collateral security for payment *** on that certain note of the Assignor, or its agents, dated May 1, 1974, in the original principal amount of $329,500";

and further states that the collateral assignee

> "may exercise any one or more of all of the rights or remedies set forth in the Note hereinabove described."

Preliminarily, we note that Miller's reliance on this language as support for her argument that her right to cause a public sale of the beneficial interest in the Harris trust accrued upon default of the due-on-sale clause in the La Salle trust deed presupposes our acceptance of the premise that the terms of the trust deed were sufficiently incorporated by reference into the La Salle note and, in turn, into the collateral assignment of the Harris trust through the above-

quoted provisions—which is, of course, the very issue requiring resolution.

As we have already determined, the language of the La Salle note specifically referring to the trust deed, both by name and number, and generally incorporating all of the terms contained therein, was sufficient to entitle the holder of the note—a bearer instrument—to either foreclose the mortgage, sue on the note, or both, in the event of a default of a provision in the trust deed. In contrast, the collateral assignment, like the Harris trust agreement, is devoid of any reference whatsoever to the La Salle trust; and while it does specify that the "certain note" was dated May 1, 1974, we have examined the documents contained in the record relating to the property prior to the 1980 contract sale to the Becovics—which reflect at least three separate transfers thereof, involving several persons in addition to those who are parties in this action—and find that they all bear that date. Thus, we cannot assume, as Miller's argument does, that the "certain note" referred to in the collateral assignment was that signed by the O'Malleys as part of the transfer from the La Salle trust to the Harris trust, particularly since it was alleged in the O'Malleys' answer to Miller's countercomplaint that the Harris trust was not established until July 1974, and that the documents relating thereto had been backdated by Miller. Although, as we have previously stated, the record contains nothing evidencing the actual conveyance of title from La Salle to Harris, the fact that the Harris trust agreement, providing that Harris was "about to take title" to the property, was not executed until July 17, 1974, seems to lend support for that allegation and thus raises questions of fact not only as to the identity of the note referred to in the collateral assignment, but also as to the accuracy and validity of the documents presented in evidence.

Moreover, as mentioned above, in *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488 (affirming 116 Ill. App. 3d 579, 451 N.E.2d 618), the note in issue contained a provision similar to the one in the collateral assignment here, which read, "[t]his note is secured by a mortgage of even date to said association ***." While upholding the lender's right to foreclose the mortgage because of a default of the due-on-sale clause contained therein, both the supreme and appellate courts noted that, being the only reference to the mortgage, the quoted language was not sufficient to incorporate the terms thereof into the note so as to also entitle the lender to a money judgment against the mortgagor in a suit on the note, notwithstanding the fact that the mortgagor had

signed both documents.

■ In the light of the above, we cannot say that the evidence, when construed most strongly against Miller, so clearly establishes that the due-on-sale clause of the La Salle trust deed was sufficiently incorporated into the collateral assignment as to entitle her, as a matter of law, to a judgment on her counterclaim for a declaration that she is the owner of the beneficial interest of the Harris trust by virtue of her purchase at a public sale thereof.

Having determined that summary judgment for Miller was improper, we nevertheless consider the O'Malleys' and the Becovics' contention that certain affirmative defenses in the O'Malleys' answer to Miller's countercomplaint raised material questions of fact requiring a hearing.

Initially, we note that although the supreme court has held that due-on-sale clauses are valid *per se (Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 454 N.E.2d 249) and are not to be tested for reasonableness on a case-by-case basis (*Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1), the *Baker* court left undisturbed the borrower's right to raise traditional equitable defenses, and stated that "a court may relieve a borrower from unconscionable or inequitable conduct of the lender [citation]." 61 Ill. 2d 119, 126, 333 N.E.2d 1, 5.

Asserting the equitable defenses of waiver, *laches* and unclean hands, the O'Malleys alleged that Miller (a) had prior knowledge of the January 1980 contract sale to the Becovics and, in fact, induced them to sell the property to the Becovics in order to cure arrearages on the loan; and (b) thereafter knowingly benefitted from the contract sale by accepting payment of the arrearages as well as two installment payments before conducting a public sale of the beneficial interest on July 8, 1980. On appeal, they argue that Miller's failure to deny, or in any way respond to, these allegations in their pleadings constitutes a binding admission thereof and therefore renders summary judgment for Miller improper.

It is well settled that the failure to reply to new matter raised by way of affirmative defense in an answer or countercomplaint results in an admission of the allegations contained therein (Ill. Rev. Stat. 1979, ch. 110, par. 40(2); *First Federal Savings & Loan Association v. American National Bank & Trust Co.* (1968), 100 Ill. App. 2d 460, 241 N.E.2d 615), although such failure does not necessarily amount to an admission that the new matter constitutes a valid legal defense (*Kratovil v. Thieda* (1965), 62 Ill. App. 2d 234, 210 N.E.2d 819).

■ In her brief and in arguments before us, Miller responds that the O'Malleys failed to support their allegations with affidavits or depositions, and thus, the allegations standing alone did not create any triable issues of fact to which she was required to respond. This argument, however, ignores the fundamental rule that it is the burden of the party moving for summary judgment to establish that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) Only where the movant has made some evidentiary showing which refutes the allegations made must the party opposing summary judgment present counteraffidavits. (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958.) Here, Miller presented nothing to controvert the O'Malleys' allegations that she knew of the proposed contract sale to the Becovics; that she voiced no opposition to it; or that she thereafter knowingly accepted arrearage and installment payments derived from the proceeds of that sale. Consequently, we must accept these factual allegations as true. However, whether Miller's failure to voice opposition to the sale or to refuse the payments tendered by the O'Malleys amounted to a waiver of her right to declare a default of the trust deed, and whether the lapse of time between these events and the notification to the O'Malleys of her intention to enforce the due-on-sale clause was an unreasonable delay which caused prejudice to them and to the Becovics and thus constituted *laches*, are questions requiring resolution by the trial court upon a full hearing. See *Damen Savings & Loan Association v. Heritage Standard Bank & Trust Co.* (1982), 103 Ill. App. 3d 301, 431 N.E.2d 34; *First National Bank v. Brown* (1980), 90 Ill. App. 3d 215, 412 N.E.2d 1078.

The O'Malleys also raise the defense of waiver on the ground that Miller did not enforce the due-on-sale clause when the property was transferred by Kaufman, as beneficiary of the La Salle trust, to them, as beneficiaries of the Harris trust, alleging that Miller also knew and acquiesced to that transaction. Although Miller did not directly respond to these allegations in her pleadings, she did assert, in a memorandum in support of her motion for summary judgment, that the O'Malleys—not Kaufman—were the beneficiaries of the La Salle trust. The record is unclear as to Kaufman's role in these transactions; however, if, as the O'Malleys allege, he was a *bona fide* purchaser of the beneficial interest in the La Salle trust from Miller, there remains the question whether, by virtue of her failure to enforce the due-on-sale clause upon Kaufman's transfer of the property to the O'Malleys, she waived or should be estopped from enforcing

her right to declare a default thereof upon the O'Malleys' transfer to the Becovics. See *First National Bank v. Brown* (1980), 90 Ill. App. 3d 215, 412 N.E.2d 1078.

■ The O'Malleys also assert that there is a material question of fact as to whether Miller is the real party in interest in this action. They posit that Cynthia's husband, Joseph Miller, is the person with whom they dealt since their purchase of the property, and that Cynthia is merely a "proxy or nominee" through whom Joseph is litigating his interests in the property. The record reveals, however, that the La Salle note which Miller purported to accelerate was a bearer instrument and that the assignment of the beneficial interest in the Harris trust by the O'Malleys was made to and accepted by Cynthia Miller. Under these circumstances, we cannot say that Cynthia Miller is not a real party in interest in this action.

■ Finally, the O'Malleys contend that there is a material question with regard to whether acceleration of the note was declared or demand for payment made. While it is true that the O'Malleys denied Miller's allegations in the countercomplaint that she declared an acceleration of the La Salle note and demanded payment of the sum remaining due thereunder, our examination of the note reveals that demand for presentment for payment and notice of nonpayment and protest were expressly waived. The note further recites that payment shall "at once become due and payable without notice upon default" of a provision in the La Salle trust deed. Thus, assuming that Miller had the right to enforce the due-on-sale clause against the O'Malleys, the dispute over whether she declared acceleration or demanded payment of the sum remaining due on the note does not appear to have constituted such a material question of fact as to preclude summary judgment for Miller. See *Solomon v. Baron* (1984), 123 Ill. App. 3d 255.

For the reasons stated, the order of the trial court granting summary judgment for Miller is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

MEJDA, P.J., and PINCHAM, J., concur.