(No. 46999

ROBERT E. BAKER *et al.*, Appellants, v. LOVES PARK SAVINGS AND LOAN ASSOCIATION, Appellee.

*Opinion filed June 2, 1975.*

Maynard, Brassfield & Cowan, of Rockford (Alfred W. Cowan, Jr., of counsel), for appellants.

Guyer and Enichen, of Rockford (Edward J. Enichen and David E. Mayfield, of counsel), for appellee.

Giffin, Winning, Lindner, Newkirk, Cohen, Bodewes &

Narmont, of Springfield (James M. Winning, of counsel), for *amicus curiae* Illinois Savings and Loan League.

MR. JUSTICE RYAN delivered the opinion of the court:

The plaintiffs, Richard E. Baker and Laurie J. Baker, executed a promissory note dated March 5, 1967, payable to the defendant, Loves Park Savings and Loan Association. The note was for $15,700 with interest at 6 percent per annum and provided for monthly installment payments of $102. The note was secured by a mortgage on property improved with a single-family residence owned by the plaintiffs. Section A(8)(d) of the mortgage provides:

> "A. THE MORTGAGOR COVENANTS DURING THE TERM OF THIS MORTGAGE:
>
> * * *
>
> (8) Not to suffer or permit without the written permission or consent of the mortgagee being first had and obtained:
>
> * * *
>
> (d) A sale, assignment or transfer of any right, title or interest in and to said property or any portion thereof. ***"

The note provides:

> "We further agree that upon any default upon this obligation, or the instrument securing it, interest at the rate of one per cent (1%) per annum above the original rate provided herein on the unpaid balance of this indebtedness may be charged for the period of such default. Upon any default under this obligation, or the instrument securing it, at the option of the holder of this note, the unpaid balance of this note, and any advances made under it, or the instrument securing it, together with interest, shall become due and payable, time being the essence of this contract. ***"

On March 14, 1970, without securing mortgagee's consent, the plaintiffs entered into an agreement for warranty deed contracting to convey the property covered

by the mortgage to Alfred G. Wilson and Linda L. Wilson. The contract provides that the purchasers are to pay to the plaintiffs $102 per month, which amount includes interest at the rate of 6 percent per annum on the unpaid balance of the purchase price. The plaintiffs deposited an executed warranty deed in escrow to be delivered to the purchasers upon completion of the contract. The agreement provides that the purchasers are to have immediate possession.

The defendant learned of this transaction and on March 26, 1970, informed the plaintiffs by letter that it would not recognize the sale and that it would thereafter charge the additional 1 percent interest provided in the note increasing the monthly payments to $109.

The plaintiffs have refused to consent to the payment of the increased interest and have continued to make payments of $102 per month to the defendant. The defendant has added to the unpaid balance of the note the additional 1 percent per month interest.

Plaintiffs brought this action in the circuit court of Winnebago County seeking a declaration that section A(8)(d) of the mortgage and the corresponding provision of the note are unlawful and unenforceable. Count II of the amended complaint prays for a declaration that the defendant has waived any benefits of these provisions.

Following the filing of an answer the plaintiffs moved for summary judgment alleging the invalidity of the provisions of the note and mortgage as being restraints on alienation. They also alleged that the provision of the note providing for additional interest in the event of default is invalid. The defendant also filed a motion for summary judgment. The circuit court of Winnebago County denied the defendant's motion and allowed the plaintiffs' motion for summary judgment on Count I, finding that section A(8)(d) of the mortgage constitutes an unlawful restraint on alienation.

The appellate court reversed the judgment and remanded the cause to the circuit court with directions that

it determine whether the restraint on alienation is reasonable under the circumstances involved in this case. (21 Ill. App. 3d 42.) We granted plaintiffs' petition for leave to appeal.

The power of alienation of real property, since an early date of the English common law, has been thought to be socially and economically desirable and is now regarded as an attribute of ownership. (Schnebly, *Restraints Upon the Alienation of Legal Interests: I,* 44 Yale L.J. 961 (1935).) From this early concept the rule against restraints on alienation has developed, although not always logically or consistently. It is not necessary in this opinion to develop the historical evolvement of the law relating to restraints nor to discuss the reasons therefor or the exceptions thereto. The subject has been extensively covered by writers in this field. See generally 6 R. Powell, The Law of Real Property, ch. 77; Bernhard, *The Minority Doctrine Concerning Direct Restraints on Alienation,* 57 Mich. L. Rev. 1173 (1959); L. Simes and A. Smith, The Law of Future Interests, secs. 1111, 1114, 1131, 1161 (2d ed. 1956); Browder, *Restraints on the Alienation of Condominium Units (The Right of First Refusal),* 1970 U. Ill. L.F. 231.

This court in *Gale v. York Center Community Cooperative, Inc.,* 21 Ill.2d 86, has recently summarized the law in this State relating to restraints as follows:

"Thus, as a general rule, restraints on alienation are void \*\*\*. Such a restraint may be sustained, however, when it is reasonably designed to attain or encourage accepted social or economic ends. \*\*\*

\*\*\* [I]t would appear that the crucial inquiry should be directed at the utility of the restraint as compared with the injurious consequences that will flow from its enforcement. If accepted social and economic considerations dictate that a partial restraint is reasonably necessary

for their fulfillment, such a restraint should be sustained. \*\*\* In short, the law of property, like other areas of the law, is not a mathematical science but takes shape at the direction of social and economic forces in an everchanging society, and decisions should be made to turn on these considerations." 21 Ill.2d 86, 92-93.

The provision in the mortgage restricting the sale, or transfer of the property described without the written consent of the mortgagee constitutes a restraint on the alienation of the property. The fact that the mortgage permits such a transfer of interest with the consent of the mortgagee does not remove the restraint. (See 4 Restatement of Property, sec. 406, comment *h* at p. 2404 (1944); Comment, *Debtor-Selection Provisions Found in Trust Deeds and the Extent of Their Enforceability in the Courts,* 35 S. Cal. L. Rev. 475 (1962).) The defendant contends, however, that if the consent-to-sale clause in the mortgage constitutes a restraint, it was designed to encourage and attain an accepted social or economic goal and thus constitutes a reasonable restraint and should be upheld.

In applying the reasonableness test of *Gale* and not the rigid common law proscription of restraints on alienation, we look to the underlying purpose of the restraint. If the restraint is "reasonably designed to attain or encourage accepted social or economic ends," it may be sustained.

We see little difference in the end to be promoted by the restraint contained in the mortgage in this case from the end which is recognized as a legitimate object of protection by a restraint contained in a contract for sale of land. Section 416 of the Restatement of the Law of Property states that a restraint imposed by a vendor on the interest of a vendee under a contract for sale of land is valid. The restraint is imposed primarily for the protection of the security interest of the vendor. "The reasonableness

of this form of protection of the vendor is sufficient to overcome the considerations otherwise favoring unrestricted freedom of alienation." (4 Restatement of Property, sec. 416, Comment *a*, at 2449 (1944).) Also, in *Coast Bank v. Minderhout* (1964), 61 Cal. 2d 311, 392 P.2d 265, 38 Cal. Rptr. 505, it was held not to be unreasonable for a lender to condition the continued extension of credit to the debtors on their retaining their interest in the property that stood as security for the debt.

The extension of credit by a lender to a debtor involves more than a mere reliance on the property mortgaged as security for the obligation. Involved in each transaction is also the appraisal of the personal integrity of the borrower. It seems to be completely justifiable for the protection of the security interest of the lender to prohibit the alienation, without the consent of the lender, of property which stands as security for the debt to a person whose personal and financial qualities are unknown to and were never considered by the lender in making the loan.

Thus we conclude that the restraint contained in the mortgage in this case is permissible because it is a reasonable restraint, that is, one for which sound and convincing reason exists. (See Volkmer, *The Application of the Restraints on Alienation Doctrine to Real Property Security Interests,* 58 Iowa L. Rev. 747, 764 (1973).) It is a restraint imposed for the purpose of protecting the security interest of the lender, a recognized valid purpose for which a restraint may be imposed.

The appellate court, although applying the test of reasonableness to the restraint in this mortgage, remanded the case to the trial court to determine if the restraint was in fact reasonable under the circumstances of this case. We recognize that some cases have applied the reasonableness test on a case by case basis. (See *Tucker v. Lassen Savings and Loan Ass'n* (1974), 12 Cal. 3d 629, 526 P.2d 1169, 116 Cal. Rptr. 633; *Tucker v. Pulaski Federal Savings and Loan Ass'n* (1972), 252 Ark. 849, 481 S.W.2d 725;

*Baltimore Life Insurance Co. v. Harn* (1971), 15 Ariz. App. 78, 486 P.2d 190; see also Bernhard, *The Minority Doctrine Concerning Direct Restraints on Alienation*, 57 Mich. L. Rev. 1173 (1959).) However, we feel that under the holding of this court in *Gale* the valid and accepted purpose sought to be achieved by the restraint in this mortgage, that is, the protection of the lender's security interest, must determine the validity of the restraint and not the circumstances of each particular case. See *Coast Bank v. Minderhout.*

· Since stability of real estate titles is of paramount importance it is necessary that the court follow a policy in construing restraints on alienation which will produce a reasonable degree of certainty. An attorney, in construing a restraint in a chain of title, should be able to reasonably predict the effect of the restraint and whether it will or will not be enforced. (57 Mich. L. Rev. 1173, 1186-87; Manning, *The Development of Restraints on Alienation Since Gray*, 48 Harv. L. Rev. 373, 405 (1935).) We feel that in cases involving consent to sell restraints, judging the reasonableness of the same under the circumstances in each case would not promote the desired stability of titles and would in fact make it extremely difficult to predict whether a restraint will or will not be upheld.

We realize that in other fields of the law the test of reasonableness has been applied without difficulty on a case by case basis. However, where land titles are involved, more certainty and greater predictability are required. For this reason it is more appropriate to judge the reasonableness of this restraint by the purpose sought to be obtained.

Although the validity of the restraint is not to be determined under the circumstances of each case we consider that a court may relieve a borrower from unconscionable or inequitable conduct of the lender. (*Malouff v. Midland Federal Savings and Loan Association* (1973), 181 Colo. 294, 509 P.2d 1240; *Gunther v. White* (Tenn. 1973), 489 S.W.2d 529.) The charge of the

additional 1 percent interest is not unreasonable and in this case does not constitute unconscionable or inequitable conduct on the part of the lender. Later in this opinion we remand the case to the trial court for a hearing on the pleaded issue of waiver. We also consider that other traditional equitable defenses may be raised by a mortgagor. Also, the mortgagor should not be precluded from litigating the question of whether the required consent to transfer, when requested, has been unreasonably withheld.

The promissory note provides that upon any default upon the note or the instrument securing it, interest at the rate of 1 percent per annum above the original rate provided in the note may be charged on the unpaid balance of the note for the period of such default. The plaintiff challenges this provision contending it constitutes a penalty and is therefore unenforceable. This contention does not involve the question of usury. The note was executed in May, 1967, and provided for interest at the rate of 6 percent. The additional 1 percent interest does not violate the statutory maximum. Ill. Rev. Stat. 1965, ch. 74, pars. 4, 5.

It is generally held that the maker of a note may stipulate to pay a higher interest rate after maturity and the additional amount will not be considered a penalty but will be considered liquidated damages. (See Annot., 12 A.L.R. 367 (1921); Annot., 28 A.L.R.3d 449 (1969); 45 Am. Jur. 2d *Interest* sec. 65 (1969).) Early cases in this State permitted the enforcement of stipulations for the payment of increased interest after maturity although the total amount of interest charged after maturity exceeded the maximum amount authorized by statute. The rationale of these cases is that the additional interest charge is not a penalty but is considered as liquidated damages accruing day to day for the duration of the default and which the obligor may relieve himself of at any time. (*Bane v. Gridley*, 67 Ill. 388; *Walker v. Abt*, 83 Ill. 226.) In 1879 the General Assembly enacted a law which prohibited

contracting for the payment of a rate of interest in excess of the lawful rate by reason of nonpayment at maturity. This provision is now found in section 5 of the Interest Act (Ill. Rev. Stat. 1965, ch. 74, par. 5). Although these cases no longer have precedential value on the question of usury, they support the proposition that an increased interest payment after maturity is not a penalty but is considered as liquidated damages.

The charge of the additional 1 percent interest may be triggered by any default upon the note or the mortgage. In addition to the covenant not to sell the property without the consent of the mortgagee, the mortgage contains several other covenants, such as: to pay taxes, to keep the improvements insured, not to commit waste, etc. A breach of any one of these covenants may bring about the increased interest charge. We do not consider this increase to be a penalty. (See 55 Am. Jur. 2d *Mortgages* sec. 371 (1971).) Instead, as in the early Illinois cases cited above, we view this as a provision for liquidated damages for a breach of the covenant. The increase in the interest rate is not unreasonable. The additional charge is not for a fixed amount and does not relate back to be computed from a time prior to the breach. Rather it is computed at the stipulated rate only from the date of default and is charged only for the duration of the default. It would appear that actual damages for a breach of any of these covenants would be uncertain and difficult to ascertain or prove. Under these circumstances it would seem appropriate that the parties should agree on an increase in the interest rate as liquidated damages for a breach of a covenant in the mortgage. See Annot. 41 A.L.R. 979 (1926).

Count II of the amended complaint prayed for a declaration that the defendant by its conduct had waived any benefit of the provisions in the mortgage relating to sale and in the note relating to additional interest on default. The trial court granted the plaintiff's motion for summary judgment only as to count I of the amended

complaint. There has been no disposition of count II. The judgment of the circuit court as to count I of the amended complaint is reversed and the cause is remanded to the circuit court of Winnebago County for the disposition of count II of the amended complaint. The judgment of the appellate court is affirmed as modified herein.

*Appellate court affirmed as modified; circuit court reversed and cause remanded, with directions.*