WHEELING TRUST & SAVINGS BANK, Trustee, Plaintiff-Appellant, v. CITIZENS NATIONAL BANK OF DOWNERS GROVE, Defendant-Appellee.

Second District   Nos. 85—0069, 85—0223 cons.

Opinion filed April 3, 1986.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellant.

Rodney W. Equi, Keith E. Roberts, Sr., and Robert R. Verchota, all of Donovan & Roberts, P.C., of Wheaton, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Wheeling Trust & Savings Bank, as trustee, filed a declaratory judgment action to declare the 6% over prime rate of interest provision in an extension agreement with defendant, Citizens National Bank of Downers Grove, as penal and unenforceable. Following cross-motions of the parties for summary judgment, plaintiff appealed the granting of defendant's motion for summary judgment. After judgment was awarded in its favor, defendant filed a petition for reimbursement of attorney fees incurred in the defense of the declaratory judgment action. The petition for attorney fees was denied, and defendant brought a separate appeal which has been consolidated with the appeal from the underlying action.

The issue presented in the appeal from the underlying action is whether the controverted part of the interest provision of the extension agreement provided for a discount for early payment or a penalty upon default. The defendant's appeal from the denial of attorney fees presents the question whether the trial court properly determined that the contractual attorney fees provision in the mortgage was not applicable to the issue addressed in the declaratory judgment proceeding brought by plaintiff.

Plaintiff filed a complaint for declaratory judgment requesting the circuit court to declare the rights and liabilities of the plaintiff and defendant under an extension agreement entered into by the parties. The complaint alleged that on or about December 21, 1978, plaintiff, as trustee, executed a mortgage on real estate held by it in trust to itself, Wheeling Trust & Savings Bank, for the principal sum of $1,000,000 which secured a promissory note. The mortgage and note were later assigned to defendant on May 27, 1982. It was also alleged that on or about June 14, 1982, plaintiff and defendant entered into a written extension agreement which extended the due date on the promissory note to March 23, 1983. These allegations were admitted by defendant in its answer. Plaintiff also alleged that the interest rate on the promissory note prior to the extension agreement was 2% over the prime rate per annum and that the increase rate of interest of 6% over prime upon a default as set forth in the extension agreement was penal in nature and unenforceable. Defendant denied these allegations and asserted as an affirmative defense in its answer that the new interest rate provision of 6% over prime was bargained for consideration to extend the promissory note and that the reduction from 6% over prime to .5% over prime for timely payment in the extension agreement was to encourage prompt payment.

The pertinent paragraph of the extension agreement provides, in relevant part, as follows:

"3. Said remaining indebtedness of $ 863,722.22 shall be paid on or before March 22, 1983 and the Owner in consideration of such extension promises and agrees to pay the principal sum secured by said mortgage as and when therein provided, as hereby extended and to pay all accrued interest thereon on December 22, 1982 and on the 22nd day of each and every succeeding month thereafter until the principal balance is paid in full with interest at the prime rate established by the First National Bank of Chicago, plus 6% per annum. Provided, however, that so long as no default exists under this Extension Agreement or the terms and conditions of the mortgage and note hereinabove described and further provided that each and every interest payment is made on or before 10 days of its due date, (the late payment of which constitutes a default hereunder), the interest rate shall be reduced to the prime rate established by the First National Bank of Chicago, plus .5% per annum, with a ceiling of 20%. If any default exists at any time or any interest payment is received more than 10 days after its due date as set forth above, the interest rate will remain at the prime rate established by the First National Bank of Chicago plus 6% per annum without any interest rate ceiling, notwithstanding the borrowers cure of any said default or the payment of subsequent interest within 10 days of its due date."

In deciding the cross-motions for summary judgment in defendant's favor, the trial court found that the interest provision setting the rate of interest at 6% over the prime rate and allowing for a reduction to the prime rate plus .5% on prompt payment was not a penalty provision, but was an inducement to pay on time.

Plaintiff does not dispute that summary judgment was the appropriate procedure for determining the construction of the interest provision of the extension agreement as a matter of law. Rather, plaintiff first contends that the increased rate of 6% over prime, which is effective upon untimely payment of interest or any other default prior to maturity of the principal obligation, is a penalty. It also reasons that, under the provision at hand, once any default occurs the increased rate of interest is applicable to the balance of the payments even though subsequent payments may be timely. This, plaintiff contends, citing *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1, is also unenforceable as

a penalty when it occurs after a default in the payment of interest before maturity and the increased rate is charged beyond the duration of the default.

While we find the decision of our supreme court in *Baker* to be instructive, it is not dispositive of the precise issue before us. In *Baker*, a party executed a promissory note, secured by a mortgage, which provided that upon any default upon the note or the instrument securing it, interest at the rate of 1% per annum above the original rate provided in the note may be charged on the unpaid balance of the note for the period of the default. This provision was challenged on the basis that it constituted a penalty and was therefore unenforceable. The supreme court did not consider this increased interest charge to be a penalty but viewed it as a provision for liquidated damages. (*Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 128, 333 N.E.2d 1.) The court stated:

> "The increase in the interest rate is not unreasonable. The additional charge is not for a fixed amount and does not relate back to be computed from a time prior to the breach. Rather it is computed at the stipulated rate only from the date of default and is charged only for the duration of the default. It would appear that actual damages for a breach of any of these covenants would be uncertain and difficult to ascertain or prove. Under these circumstances it would seem appropriate that the parties should agree on an increase in the interest rate as liquidated damages for a breach of a covenant in the mortgage. See Annot., 41 A.L.R. 979 (1926)." 61 Ill. 2d 119, 128, 333 N.E.2d 1.

■ In the case at bar, we must focus on the particular language of the extension agreement to determine what the parties intended by their agreement. The terms of a note must be determined in accordance with the intention of the parties when that can be ascertained from the language used (*Reeves v. Stipp* (1879), 91 Ill. 609, 610-11; *Vigilante v. National Bank of Austin* (1982), 106 Ill. App. 3d 820, 823, 436 N.E.2d 652), and the payment of interest is determined by the contract between the borrower and the lender (*Wishnoff v. Guardian Savings & Loan Association* (1975), 34 Ill. App. 3d 107, 110, 339 N.E.2d 494), subject to statutory limitations.

■ The parties here executed an extension agreement on June 14, 1982, extending the time of payment of the remaining $863,722.22 indebtedness on the original $1 million note until March 22, 1983. The extension agreement in specific terms requires plaintiff to make monthly payments "with interest at the prime rate es-

tablished by the First National Bank of Chicago, plus 6% per annum." We think this clearly establishes the rate of interest on the extension agreement.

The agreement further sets forth that "[p]rovided, however, that so long as no default exists under this Extension Agreement or the terms and conditions of the mortgage and note hereinabove described and further provided that each and every interest payment is made on or before 10 days of its due date, (the late payment of which constitutes a default hereunder), the interest rate shall be reduced to the prime rate *** plus .5% per annum, with a ceiling of 20%." It further provides that if any default exists at any time or if any interest payment is received more than 10 days after its due date, "the interest rate will remain at the prime rate *** plus 6% per annum *** notwithstanding the borrower's cure of any said default or the payment of subsequent interest within 10 days of its due date."

█ We also conclude that this provision is clear and provides for a substantial discount from the 6% over prime interest rate if there is no default or untimely interest payment. Both parties appear to be experienced in this type of financial transaction and expressed their agreement in a detailed and specific writing. Unlike the situation referred to above in *Baker* which provided for an increase in the interest rate upon default, the contractual provision here provides for what is in essence a discount in the interest rate for prompt payment of the installments and principle. We do not view the bargained for interest provision here as a penalty. Whether the provision is to be termed as one for liquidated damages is of no consequence. It is simply a rate of interest agreed upon by the parties which is discounted upon prompt payment.

Subject to statutory limitations, parties to contracts may make their own stipulation as to the rate of interest including that the rate of interest will be lowered on prompt payment. (See 45 Am. Jur. 2d *Interest and Usury* sec. 64 (1969); *Wrenn v. University Land Co.* (1913), 65 Or. 432, 133 P.627.) Plaintiff does not contend that the 6% over prime interest rate is unreasonable or that it was in any way fraudulently disadvantaged in entering into the extension agreement. The intention of the parties is clearly expressed in the agreement and, under the circumstances here, will be upheld.

In summary, we hold that the extension agreement expressly provides for an interest rate of 6% over prime. Upon prompt payment of all installments of interest and the principal, the interest rate is discounted to .5% over prime. The fact that only one late

payment will prevent the reduced interest rate from being operative for the entire term of the note even though the subsequent payments are promptly made, although severe, is one of the terms the parties bargained for in making the extension agreement on the overdue note. For the foregoing reasons, the judgment for defendant on the underlying suit is affirmed.

Following the granting of summary judgment in its favor, defendant filed a petition for reimbursement of attorney fees incurred in the defense of the declaratory judgment action brought by plaintiff. Defendant sought attorney fees pursuant to a provision in the mortgage which provides, in pertinent part, that "the Mortgagor covenants *** to appear in and defend any proceeding which in the opinion of the Mortgagee affects its security hereunder, and to pay all costs, expenses and attorney's fees incurred or paid by the Mortgagee in any proceeding in which it may be made a party defendant by reason of this Mortgage." The trial court denied the petition for attorney fees.

Defendant's contention below and in this court is that the above-quoted provision in the mortgage constitutes an express contractual right to attorney fees. Defendant principally argues that the provision sets forth that the mortgagor will pay attorney fees incurred "in any proceeding" to which defendant is made a party and, accordingly, is not limited only to proceedings which may affect its security interest. Defendant further asserts that the extension agreement specifically provides that the mortgage secures that agreement. Plaintiff responds that contractual provisions for attorney fees must be strictly construed and that the underlying declaratory judgment suit involved only a construction of a provision of the extension agreement, not the mortgage, which does not affect the defendant's security.

The parties agree that although the general rule in Illinois is that the successful litigant in a civil action may not recover attorney fees from an adversary, a provision in a contract between the parties for an award of attorney fees is an exception to this rule. (*Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 411-12, 462 N.E.2d 488; *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 274-75, 465 N.E.2d 139.) The dispute here, however, involves an interpretation of the provision for attorney fees in relation to its application to the declaratory judgment suit brought by plaintiff to determine whether the interest rate provided in the extension agreement, a document separate from the mortgage, was void as a penalty. The extension agreement itself

makes no provision for attorney fees, nor is there any contention by defendant that the original note so provides.

■ Contractual provisions for attorney fees are to be construed strictly, and fees cannot be recovered for any services unless so provided by the specific terms of the mortgage. (*Northern Trust Co. v. Sanford* (1923), 308 Ill. 381, 389-90, 139 N.E.2d 603; see also *Bartsch v. Gordon N. Plumb, Inc.* (1985), 138 Ill. App. 3d 188, 204, 485 N.E.2d 1105.) Generally, where an action for a declaration of rights has been brought, it has been held that an attorney fee provision in the note or lease at issue does not entitle the party to the suit to attorney fees because the underlying action was to declare rights, not to enforce the obligations of the parties as contemplated by the contract provision for attorney fees. (*Zimmerman v. First Production Credit Association* (1980), 89 Ill. App. 3d 1074, 1076-77, 412 N.E.2d 216; *Arrington v. Walter E. Heller International Corp.* (1975), 30 Ill. App. 3d 631, 642-43, 333 N.E.2d 50.) The court must determine the intention of the parties with respect to the provision for attorney fees. *Kaiser v. Olson* (1981), 105 Ill. App. 3d 1008, 1016, 435 N.E.2d 113.

■ The operative language in the provision of the mortgage providing for attorney fees is that the mortgagor shall pay "attorney fees incurred or paid by the Mortgagee in any proceeding in which it might be a party defendant *by reason of this Mortgage.*" (Emphasis added.) The declaratory judgment action was brought to determine the parties' rights and obligations under the interest provision of the extension agreement. Defendant was not made a party to the declaratory judgment suit by reason of the mortgage. Strictly construed, the attorney fee provision in the mortgage is inapplicable under the circumstances here, and the trial court properly denied defendant attorney fees.

The judgments of the circuit court of Du Page County are affirmed.

Affirmed.

STROUSE and SCHNAKE, JJ., concur.