2023 IL App (1st) 221380

FOURTH DIVISION
Order filed: October 5, 2023

No. 1-22-1380

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| VILLAGE OF RIVERDALE, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) | |
| v. | ) ) | |
| NOSMO KINGS, LLC, PARKSIDE CAPITAL, LLC, FOX VALLEY FIRE & SAFETY CO., POLSKY & ASSOCIATES, LTD., ROBERT TEBBENS, SENSIBLE HEAT & A/C, INC., GRASSO BASS, P.C., WASFI TOLAYMAT, ERNEST LEE BAKER, MARKHAM ASHPHALT COMPANY, SHAHNAWAZ HASAN, ROYAL MARINA, INC., UNKNOWN OWNERS and NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | No. 2016 M6 7398 |
| (Shahnawaz Hasan and Royal Marina, Inc., Defendants and Counterplaintiffs-Appellants), _____ | ) ) ) ) | |
| SHAHNAWAZ HASAN and ROYAL MARINA, INC., | ) ) ) | |
| Third-Party Plaintiffs-Appellants | ) ) | |

No. 1-22-1380

| | |
|---|---|
| v. | ) |
| | ) |
| LAWRENCE JACKSON, ROBERT | ) |
| SCHARNHORST, and JOHN THOMAS, | ) |
| | ) |
|     Third-Party Defendants | ) |
| | )   Honorable |
| (Lawrence Jackson and Robert Scharnhorst, Third-Party | )   Michael B. Barrett, |
| Defendants-Appellees). | )   Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1     In this latest chapter in a long-running dispute regarding the ownership and development of a marina, Shahnawaz Hasan and Royal Marina, Inc. (together "Hasan and Royal"), appeal a circuit court order that granted two motions for summary judgment and disposed of their counterclaims against the Village of Riverdale ("Village") and their third-party claims against Village officials Lawrence Jackson and Robert Scharnhorst. Because the circuit court erred in concluding that Hasan and Royal lacked an ownership interest in the property at issue, we reverse the court's order and remand for reconsideration.

¶ 2     The property at issue in this case consists of three parcels of real estate, collectively known as the Riverdale Marina ("Marina"). In February 2012, the Village entered into a Redevelopment Agreement with the then-owner of the Marina, Nosmo Kings, LLC ("Nosmo"). Under the terms of the agreement, Nosmo agreed to redevelop the Marina in exchange for financing and reimbursements from the Village. However, later that year, in October 2012, the Village filed suit against Nosmo and its owner, John Thomas, alleging that Nosmo had breached the Redevelopment Agreement in various ways. Through the suit, the Village sought the return of the $900,000 that it

had contributed to the project to that point. The parties ultimately entered into a settlement agreement and the suit was dismissed.

¶ 3    One particular provision in the Redevelopment Agreement has become the central focus of the present appeal. Section 7.2.2(a) of the agreement provided that "prior to thirty-six (36) months after the receipt of the Certificate of Substantial Completion for Phase IV by the Village, the Developer [Nosmo] shall not sell, assign, transfer, lease, encumber or otherwise dispose of the Property under any circumstances without the written approval of the Village ***."

¶ 4    However, on February 24, 2014, in apparent contravention of section 7.2.2(a), and without either the permission of the Village or having substantially completed Phase IV of the project, Nosmo and two agents of Hasan, Wasfi Tolaymat and Ernest Lee Baker, entered into a contract for the sale of the Marina and Nosmo purportedly deeded the Marina to Tolaymat and Baker. Hasan's agents recorded the contract on March 20, 2014, and on May 5, 2014, they provided Hasan with quitclaims deeds to the Marina. Hasan created Royal Marina, Inc., to hold the titles to the properties.

¶ 5    Following the purported sale, Hasan and Royal made several attempts to obtain necessary transfer stamps from the Village and to record the deeds to the Marina. The Village repeatedly rebuffed their efforts, citing the Redevelopment Agreement with Nosmo as prohibiting the transfer of ownership. In the Village's view, section 7.2.2(a) rendered any attempted conveyance of the Marina void. On May 28, 2014, the Village's attorney wrote a letter to Hasan and Royal expressly stating that, because the Village never consented to Nosmo's transfer of ownership of the Marina, "[t]he Village does not recognize *** [Hasan and Royal's] claim to any form of ownership over the Property." The letter further declared that the Village would not "issue transfer stamps, issue

building permits, or take any other action for which valid consent from the fee simple owner of the Property is necessary."

¶ 6     On June 13, 2014, Hasan and Royal filed a complaint in federal court against the Village and its mayor, Lawrence Jackson, seeking various forms of relief regarding the Village's refusal to acknowledge the purported sale of the Marina. On October 17, 2014, Hasan and Royal voluntarily dismissed their case, asserting that they would instead seek mandamus relief in state court.

¶ 7     Despite Hasan and Royal's stated intention to initiate proceedings in state court, there was no further legal action in the parties' dispute until two years later when, on August 16, 2016, the Village initiated the case before us with a complaint in circuit court seeking to have the Marina declared abandoned and to be granted permission to demolish buildings on the property. The Village alleged that certain structures on the property were open, vacant, and partially collapsed, and it asserted that the property taxes from 2008 through 2014 were unpaid. The Village named as defendants Nosmo, Tolaymat, Baker, and "Unknown Owners" and "Non-Record Claimants."

¶ 8     Although not named as defendants, Hasan and Royal petitioned for, and were granted, leave to intervene. They then answered the Village's complaint and filed what would ultimately be amended to a five-count counterclaim against the Village. The counterclaims sought: (1) a writ of mandamus compelling the Village to issue a certificate of building code compliance or noncompliance and to issue transfer stamps allowing for the recording of the deeds to the Marina; (2) damages for tortious interference with prospective economic advantage and business expectancy, with Hasan and Royal alleging that the Village deliberately sought to prevent them from developing and conducting business at the Marina; (3) damages for civil conspiracy, again

regarding the Village's and its officials' alleged efforts to obstruct Hasan and Royal's business plans; (4) to quiet title to the Marina in Hasan and Royal's favor; and (5) a declaration that Hasan and Royal are the Marina's sole and rightful owners.

¶ 9    In addition to their counterclaims against the Village, Hasan and Royal also filed a third-party complaint against then-Mayor Jackson and then-Fire Chief Robert Scharnhorst (together "the Officials"), as well as Nosmo's owner, John Thomas. The operative amended third-party complaint presented the same five claims that Hasan and Royal brought against the Village, with counts one through three being brought against both Jackson and Scharnhorst, and counts four and five being brought against Thomas. The Officials answered the third-party complaint and raised several affirmative defenses, including that the claims were barred by statutes of limitations, the doctrine of laches, and sections 2-206, 2-207, and 2-212 of the Tort Immunity Act ("Immunity Act") (745 ILCS 10/2-206, 2-207, 2-212 (West 2014)).

¶ 10    In February 2021, Hasan and Royal moved for partial summary judgment under section 2-1005(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(a) (West 2020)) seeking a ruling in their favor on the "major issue" of whether section 7.2.2(a) of the Redevelopment Agreement blocked Nosmo's transfer of ownership of the Marina to Tolaymat and Baker and ultimately to Hasan and Royal. Hasan and Royal argued that two additional provisions in the Redevelopment Agreement suggested that section 7.2.2(a) did not act to void any purported conveyance of the Marina but rather acted as normal contract promise that could be breached, and that the Village had an available remedy in the event of such a breach. Specifically, Hasan and Royal pointed first to section 7.3.1(a) of the Redevelopment Agreement, which provided that "[t]he failure of the Developer [Nosmo] to perform, keep or observe any material covenant,

condition, promise, agreement or obligation of the Developer under this Agreement" constituted an event of default, and second to section 7.4(a) of the agreement, which provided that "[p]rior to Substantial Completion of the Project, the exclusive remedies of the Village for any default by the Developer under this Agreement are to terminate the Agreement, cease further payments to the Developer and seek reimbursement of all amount of the Village Contribution previously paid to the Developer under this Agreement." Hasan and Royal thus argued that Nosmo's failure to perform its obligation to obtain the Village's consent prior to conveying the Marina amounted to a default and that the Village's exclusive remedy in the event of such a default was to terminate the agreement and seek reimbursement of its contribution to the Marina project. The circuit court disagreed and denied Hasan and Royal's motion.

¶ 11 The Village then moved for summary judgment on Hasan and Royal's amended counterclaims and the Officials likewise moved for summary judgment on Hasan and Royal's third-party claims. The circuit court granted both motions, specifically finding that "the Redevelopment Agreement ("RA") was effective and enforceable, and that the RA restricted Nosmo Kings LLC's ability to convey the Riverdale Marina to Shahnawaz Hasan and Royal Marina, Inc." The court also found that "the RA did not provide the Village of Riverdale with an unlimited right to refuse to recognize or to block a transfer of title to the Riverdale Marina, as the RA contained provisions to designate a successor to Nosmo Kings LLC who could assume the obligations of the RA."

¶ 12 Regarding the Officials' motion for summary judgment, the court stated only that the motion was granted, without further elaboration. However, it appears that the court based that ruling on the same reasoning that supported its ruling on the Village's motion, with the court

expressly noting that it "grants the *two MSJs* based only on these specific findings [recounted above], and denies *both MSJs* regarding the remaining arguments raised" (emphasis added).

¶ 13   In its order, the court also stated that "pursuant to IL Sup. Ct. Rule 304(a) with respect to its rulings on the MSJs there is no just reason for delaying either enforcement or appeal or both." This appeal follows.

¶ 14   On appeal, Hasan and Royal make several arguments as to why Nosmo's conveyance of the Marina was valid, including that under the terms of the Redevelopment Agreement the conveyance was not void but rather was merely a breach of the contract, that the Village effectively terminated the Redevelopment Agreement when it filed suit against John Thomas for alleged breaches of the agreement, and that the restriction on alienation contained in section 7.2.2(a) of the Redevelopment Agreement was unreasonable and unenforceable. We find merit to the first of these arguments and reverse the circuit court's order on that basis. Although the Village and the Officials present numerous alternative bases for affirmance, we do not believe that any of those bases were sufficiently proven in their briefs. However, because it appears that some of those issues might have some merit, and because it is not clear that the circuit court considered those alternative arguments after finding that section 7.2.2(a) barred Hasan and Royal's claims, to the extent that they were properly pleaded, we leave those matters available for the parties and the circuit court to examine further on remand.

¶ 15   A motion for summary judgment may be granted where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS

5/2-1005(c) (West 2022). Accordingly, we review an order granting summary judgment *de novo*. *Unique Insurance Co. v. Tate*, 2022 IL App (1st) 210491, ¶ 15.

¶ 16 Our analysis of the Redevelopment Agreement necessarily involves contract interpretation, and "[t]he starting point of any contract analysis is the language of the contract itself." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005). "As a general rule, the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law." *Id.* (citing 12A Ill. L. & Prac. *Contracts* § 264, at 107 (1983)). Accordingly, our review is *de novo*. *Id.*

¶ 17 Hasan and Royal's primary argument on appeal is the same one they presented in their motion for partial summary judgment, that the Redevelopment Agreement's prohibition on Nosmo's sale of the Marina without the Village's consent did not void any such sale but rather was a normal contractual promise or obligation that could be breached and that the Village's remedy in the event of such a breach was to terminate the agreement and pursue reimbursement of its contributions to the redevelopment project. The Village reads the provision differently and contends that Nosmo "ha[d] no right" to sell the Marina without the Village's permission. We agree with Hasan and Royal's reading of the agreement. When we look at sections 7.2.2(a), 7.3.1(a), and 7.4(a) together, we see a contractual promise on the part of Nosmo to not sell the Marina without the Village's permission, the breach of which entitled the Village to a specified remedy.

¶ 18 " 'A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property.' " *Schweihs v. Chase Home Finance, LLC*, 2015 IL App (1st) 140683, ¶ 31 (quoting *United States v. Craft*, 535 U.S. 274, 278 (2002)).

Among these rights is the power of alienation of real property, which, "since an early date of the English common law, has been thought to be socially and economically desirable and is now regarded as an attribute of ownership." *Baker v. Loves Park Savings & Loan Ass'n*, 61 Ill. 2d 119, 123 (1975). Indeed, "[u]nder Illinois law, a property owner has an absolute right to dispose of his or her property during his or her lifetime in any manner he or she sees fit." *In re Estate of Defilippis*, 289 Ill. App. 3d 695, 700 (1997). The importance of that right is such that, as a general rule, restraints on alienation are void, and they may only be sustained "when it is reasonably designed to attain or encourage accepted social or economic ends." *Baker*, 61 Ill. 2d at 123 (quoting *Gale v. York Center Community Cooperative, Inc.*, 21 Ill. 2d 86, 92 (1960)).

¶ 19    The Restatement of the Law of Property, which Illinois courts have looked to for guidance on property issues such as this (see, *e.g.*, *Leigh v. Lynch*, 112 Ill. 2d 411, 419 (1986); *Baker* 61 Ill. 2d at 124), expounds on these principles and explains that there are three different types of restraints on alienation. It defines them as, in relevant part, "an attempt by an otherwise effective *** contract to cause a later conveyance (1) to be void (disabling restraint), (2) to impose a contractual liability upon the conveyance for conveying in breach of the agreement not to convey (promissory restraint), or (3) to terminate all or part of a conveyed property interest (forfeiture restraint)." *Unisite, LLC v. Young*, 314150, 2014 WL 1356775, at *2 (Mich. Ct. App. Apr. 3, 2014) (citing *LaFond v. Rumler,* 226 Mich. App 447, 451 (1997)). Disabling restraints that render a conveyance void are generally considered invalid. Restatement (First) of Property § 405 (1944). However, a promissory restraint may be valid if it permits alienation on certain conditions and if it is reasonable under the circumstances. *Id.* § 406.

¶ 20    The restraint in this case appears to be a promissory restraint that would render Nosmo's conveyance a breach of contract, rather than a disabling restraint that would render Nosmo's conveyance void. Section 7.2.2(a) provided that, prior to thirty-six months after the Village's receipt of the Certificate of Substantial Completion for Phase IV, one of Nosmo's obligations under the contract was to not sell the Marina without first obtaining the approval of the Village. Section 7.3.1(a) then provided that Nosmo's failure to "perform, keep or observe any material covenant, condition, promise, agreement or obligation of the Developer under this Agreement" constituted an event of default, and under section 7.4(a) of the agreement, "[p]rior to Substantial Completion of the Project, the exclusive remedies of the Village for any default by the Developer under this Agreement are to terminate the Agreement, cease further payments to the Developer and seek reimbursement of all amount of the Village Contribution previously paid to the Developer under this Agreement." When we view these provisions together, as we must do when interpreting a contract (see *Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568, ¶ 13 ("Contract language must be interpreted in light of the contract as a whole.")), we do not see a disabling restraint that categorically voided any attempted conveyance. Rather, we see a scheme that is emblematic of a promissory restraint, with Nosmo promising not to convey the property at issue without the Village's consent, and liability being imposed on Nosmo for its failure to keep that promise, with that liability being termination of the agreement and the return of the Village's contributions. See *North Point Patio Offices Venture v. United Benefit Life Insurance Co.*, 672 S.W.2d 35, 37 (Tex. App. 1984) (concluding that a contractual provision that "Grantor will not sell, lease, exchange, assign, transfer, convey or otherwise dispose of all or any part of the Property or any interest therein *** without the prior written consent of the Noteholder" was a promissory restraint on alienation).

¶ 21 Further, at least one court has concluded that a violation of the type of promissory restraint at issue here was not void but rather amounted to a mere breach of contract. In *Washington Federal v. Azure Chelan LLC,* 195 Wash. App. 644 (2016), Azure Chelan, LLC ("Azure"), sold its stake in Lake Hills Development Division 1, LLC ("LHDD1"), to LHDD1's other equity holders in exchange for a promissory note secured by a deed of trust on LHDD1's ongoing real estate development project. *Id.* at 648–49. The deed of trust contained a no-further-encumbrances provision stating that "Grantor shall not, without the prior written consent of Beneficiary, sell, transfer, or otherwise convey the Property or any interest therein, further encumber the Property or any interest therein, *** or agree to do any of the foregoing without first repaying in full the Note and all other sums secured hereby." *Id.* at 649. The consequences of LHDD1's default were that the entire unpaid balance on the note would become immediately due and that Azure could foreclose on the development. *Id.* at 650. Subsequently, LHDD1 obtained a loan from Horizon Bank ("Horizon"), which, despite the no-further-encumbrances clause in Azure's deed of trust, was secured by a second deed of trust on LHDD1's development. *Id.* at 649. After LHDD1 defaulted on its Horizon loan, Horizon's successor in interest, Washington Federal, foreclosed on the deed of trust and acquired LHDD1's property. *Id.* at 650. When Washington Federal later brought an action to quiet title to the property, Azure objected, arguing, among other things, that its deed of trust prohibited LHDD1 from further encumbering the property and that Horizon's deed of trust was, therefore, void. *Id.* at 650–51.

¶ 22 The appellate court ultimately viewed the no-further-encumbrances clause in Azure's deed of trust as a promissory restraint that entitled the injured party to damages, rather than a disabling restraint that rendered the encumbrance void. *Id.* at 655. The court reached that conclusion based

on the specific language of the clause at issue, which did not categorically bar any encumbrances, but rather allowed encumbrances if certain conditions were met. *Id.* at 657. The significance of that distinction was that LHDD1's violation of the clause merely constituted a breach of contract and did not render Horizon's deed of trust void. *Id.* at 659.

¶ 23 We see no material difference in the present case. Section 7.2.2(a) of the Redevelopment Agreement did not categorically bar any sale of the Marina, but rather allowed a sale if certain conditions were met, *i.e.*, either the passage of thirty-six months following the Village's receipt of the Certificate of Substantial Completion for Phase IV or with the Village's consent. It did not say that any attempted conveyance without the satisfaction of one of the two conditions is null and void or that Nosmo was giving up its inherent right to dispose of its property. Rather, it merely provided that Nosmo agreed to place limitations on its right to alienation, and sections 7.3.1(a) and 7.4(a) provided that Nosmo's failure to abide by that promise amounted to a default for which the Village was entitled to seek the return of its contributions to the project. Nosmo was free to exercise its right to dispose of the Marina, as long as it was willing to accept that doing so would amount to a default under the agreement. Accordingly, we conclude that the circuit court erred in determining that the Redevelopment Agreement prevented Nosmo from passing ownership of the Marina to Hasan and Royal.

¶ 24 Nonetheless, the Village and the Officials argue in the alternative that other legal grounds support affirmance of the circuit court's order. While some of these arguments might have some potential merit, the parties' briefing on these issues leave certain important questions unaddressed. Rather than engaging in those analyses and determining those issues without the parties' input, we leave these matters to be addressed more fully in the circuit court on remand. However, we will

discuss them to a degree so that the parties and the circuit court are aware of some of the issues at play.

¶ 25    As alternative bases for affirmance, the Village first asserts that Hasan and Royal's counterclaims are procedurally barred because Hasan and Royal previously brought related claims in federal court that were voluntarily dismissed and then did not file a new complaint within the statute of limitations or within one year of the date of dismissal, as required by section 13-217 of the Code (735 ILCS 5/13-217 (West 1994)).[1] The Village and the Officials also contend that Hasan and Royal's claims are barred by the equitable doctrine of laches, the Officials maintain that they are statutorily immune from Hasan and Royal's claims, and third-party defendant Scharnhorst asserts that Hasan and Royal can no longer obtain mandamus relief against him because he left his employment with the Village. We will address each of these issues in turn.

¶ 26    We start with section 13-217, which provides, in relevant part, that:

"In the actions specified in Article XIII ["Limitations"] of *** [the Code] or any other act or contract where the time for commencing an action is limited, *** [if] the action is voluntarily dismissed by the plaintiff, *** then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, *** after the action is voluntarily dismissed by the plaintiff ***."

---

[1] "Section 13-217 was amended by Public Act 89-7, § 15 (eff. Mar. 9, 1995). However, Public Act 89-7 was found unconstitutional in its entirety by this court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 228 Ill. Dec. 636, 689 N.E.2d 1057 (1997). Accordingly, the version of section 13-217 that is currently in effect is the version that preceded the amendments of Public Act 89-7. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 469 n.1, 321 Ill. Dec. 306, 889 N.E.2d 210 (2008)." *Eighner v. Tiernan*, 2021 IL 126101, ¶ 1, n.1.

The Village contends that section 13-217 bars Hasan and Royal's counterclaims because Hasan and Royal did not bring them within one year of the October 17, 2014, dismissal of their federal court action and because the one-year limitations period imposed on actions against local entities or their employees by section 8-101(a) of the Local Government and Governmental Employees Tort Immunity Act (Immunity Act) (745 ILCS 10/8-101(a) (West 2016)) has expired.

¶ 27     However, section 8-101(a) only applies to actions for damages, and only two of Hasan and Royal's counterclaims and third-party claims seek damages. Rather, they also seek a writ of mandamus and a declaration quieting title to the Marina. Such actions for relief other than damages are not necessarily barred by section 8-101(a). See 745 ILCS 10/2-101 (West 2016) ("Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee."); *Rizzi v. City of Chicago*, 1-02-0719, 2003 WL 23023847, at *9–11 (Ill. App. Ct. 1st Dist. Nov. 26, 2003) (explaining that an action for mandamus is not barred by section 8-101(a)). Further, the parties have not provided us with any additional analysis addressing any other statutes of limitations that might apply to Hasan and Royal's non-damages claims, and we will not endeavor to do that work for them.

¶ 28     In a similar vein, the Officials argue that sections 2-206, 2-207, and 2-212 of the Immunity Act provide immunity to Hasan and Royal's third-party claims regarding the denial of permits and the failure to conduct inspections. The same analysis that applies to section 8-101(a) likewise applies here. While these sections might protect the Officials from actions for damages, Hasan and Royal are seeking more than damages.

¶ 29     Furthermore, even if Hasan and Royal's claims against the Village are barred by statutes of limitations, the savings provision of section 13-207 of the Code "allows a counterclaim to

proceed despite the failure to comply with the appropriate statute of limitations period." *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 446 (2005) (citing *Pape v. Byrd,* 145 Ill.2d 13, 30 (1991)). Indeed, "courts have long recognized that application of section 13-207 is based on the principle that a plaintiff waives application of the statute of limitations with regard to potential counterclaims." *Id.* at 447. Consequently, Hasan and Royal's counterclaims against the Village might not necessarily be barred, even if those claims' applicable statutes of limitations have expired, with the caveat being that an otherwise stale claim must not have yet been barred when the plaintiff's claim arose. See *Canada Life Assurance Co. v. Salwan*, 353 Ill. App. 3d 74, 80 (2004). On that point, the parties have not briefed the issue of when the Village's claims arose and, therefore, whether Hasan and Royal's possibly expired counterclaims might be saved by section 13-207. That issue would require further exploration.

¶ 30　　The Village and the Officials also contend that Hasan and Royal's claims are barred by the equitable doctrine of laches. It is true that laches may bar Hasan and Royal's claims, even their claims for mandamus (see *Ashley v. Pierson*, 339 Ill. App. 3d 733, 739 (2003)), but "[w]hether a party is guilty of laches to a degree that would bar suit due to a delay in asserting a right is a matter within the trial court's discretion" (*Bogner v. Villiger*, 343 Ill. App. 3d 264, 268 (2003) (citing *City of Rockford v. Suski*, 307 Ill. App. 3d 233 (1999))). The court in this case implicitly denied the Village's and the Officials' laches arguments when it denied their motions for summary judgment on all bases other than the preclusive effect of section 7.2.2(a) of the Redevelopment Agreement. On the limited record before us at this pre-trial stage, particularly as it relates to any alleged prejudice to the Village and the Officials, we do not see a sufficient basis to determine that the court abused its discretion in making that ruling.

¶ 31    Lastly, third-party defendant Scharnhorst asserts that Hasan and Royal can no longer obtain mandamus relief against him because he left his employment with the Village in June 2021 and is no longer a Village official. Hasan and Royal respond that they did not sue Scharnhorst in his individual capacity but rather sued his office and that his successor should be substituted in his place. Although Hasan and Royal's third-party complaint did not specify whether the Officials were being sued in their individual or official capacities, the identity of the defendant to an action is set forth in the body of a pleading. See 735 ILCS 5/2-401(c) (West 2016); see also *Claffy v. Farrell*, 196 Ill. App. 239, 247 (1915) ("The character in which *** [a party is] in court is determined from the body of the pleadings."). And in their third-party complaint against the Officials Hasan and Royal referred to the Officials throughout as "Fire Chief" and "Mayor," suggesting that the Officials were being sued in their official capacities. With that appearing to be the case, "[i]f any trustee or any public officer ceases to hold the trust or office and that fact is suggested of record, the action shall proceed in favor of or against his or her successor." 735 ILCS 5/2-1008 (West 2016). Accordingly, even if Scharnhorst has left the Village's employ, Hasan and Royal may still pursue their claims against his successor.

¶ 32    In sum, we conclude that the circuit court erred in determining that the terms of the Redevelopment Agreement barred Nosmo's transfer of ownership of the Marina, and we reverse the order granting the Village's and the Officials' motions for summary judgment on that basis. Further, because it appears that the preclusive effect of the Redevelopment Agreement was the primary focus below and it is possible that the circuit court did not consider any further issues, and in light of the parties' failure to fully brief many of these secondary issues, we leave the additional

issues open for consideration (to the extent that they were properly pleaded) and remand for the court to reconsider the motions for summary judgment in a manner consistent with this order.

¶ 33    Reversed and remanded with instruction.

---

*Village of Riverdale v. Nosmo Kings,* **2023 IL App (1st) 221380**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2016 M6 7398; the Hon. Michael B. Barrett, Judge, presiding. |

---

| | |
|---|---|
| Attorneys for Appellant: | Dennis Both<br>15320 S. Cooper<br>Harvey, IL  60426<br>Phone:  708.210.1300 |
| | |
| Attorneys for Appellee: | Elizabeth Bartolucci<br>O'Hagan & Meyer, LLC<br>One E. Wacker Dr., Suite 3400<br>Chicago, IL   60601 |